COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judge Annunziata and
         Senior Judge Coleman
Argued at Richmond, Virginia


NANCY JACKSON BAZZLE
                                          OPINION BY
v.   Record No. 0851-01-2   CHIEF JUDGE JOHANNA L. FITZPATRICK
                                          MARCH 26, 2002
SHELTON WAYNE BAZZLE


          FROM THE CIRCUIT COURT OF HENRICO COUNTY
                    Gary A. Hicks, Judge

          Brian H. Jones (Kaestner, Pitney & Jones,
          P.C.; Pitney, Jones & Fantl, P.L.C., on
          briefs), for appellant.

          Terrence R. Batzli (Ann Brakke Campfield;
          Barnes & Batzli, P.C., on brief), for
          appellee.


     In this appeal, Nancy Jackson Bazzle (wife) contends the

trial court erred in applying the doctrine of merger and

terminating her right to spousal support.  Shelton Wayne Bazzle

(husband) presents as an additional question that the trial

court erred in applying the doctrine of laches and refusing him

a refund of his alleged overpayment of the support judgment

obtained by wife.  Finding no error, we affirm.

                    I.  BACKGROUND

     The parties were married on June 22, 1957 and divorced by a

final decree of divorce on February 21, 1974 in Henrico County

Circuit Court.  Prior to the entry of the final decree, the

parties entered into a Property Settlement Agreement (PSA) dated December 31, 1973. Paragraph 5 of the PSA provides as follows:

> (a) Commencing January 1, 1974 and continuing thereafter on the same day of each succeeding month, Husband shall pay to Wife the sum of $1,050.00 per month as periodic payments of alimony made because of the family and marital relationship and in recognition of his general support obligation, which payments shall terminate upon Wife's death.
>
>     \*    \*    \*    \*    \*    \*    \*
>
> (c) If Wife shall not sooner remarry, then commencing January 1, 1983, the alimony payments provided for in paragraph (a) above shall be reduced to $950.00 per month until January 1, 1985, when they shall be further reduced to $833.33 per month until the sooner of Wife's death or her remarriage subsequent to January 1, 1985.

Paragraph 6 of the PSA provides as follows: "[c]ommencing January 1, 1975 and adjusted annually on January 1 of each succeeding year thereafter, Husband shall pay additional support and alimony to Wife . . . ." Upon entry of the final decree, it was ordered only that the PSA "be filed with the papers in this cause."[1] The final decree provided, "[i]t is further ADJUDGED,

---

[1] At that time, Code § 20-109.1 provided in pertinent part:

> Any court may affirm, ratify and incorporate in its decree dissolving a marriage or decree of divorce . . . any valid agreement between the parties, or provisions thereof, concerning the conditions of the maintenance of the parties, or either of them . . . . Where the court affirms, ratifies, and incorporates in its decree such agreement or

and ORDERED that the Defendant pay to the Plaintiff the sum of One Thousand Fifty Dollars ($1,050.00) per month as alimony." Neither the final decree nor the PSA contained any provision regarding future modifications.  Wife never remarried.

In 1982, husband stopped paying his spousal support.  Wife filed an independent suit at law in Henrico County Circuit Court alleging anticipatory breach of contract.  She requested a judgment of $429,565, an amount she calculated would satisfy husband's remaining spousal support obligation.  She arrived at that amount by calculating the value of her spousal support payments through the end of her life expectancy, thirty-seven years according to the actuarial tables in effect at that time, and discounting that amount to its present day value.  A default judgment was awarded her on October 22, 1982 for the total

---

provision thereof, it shall be deemed for
all purposes to be a term of the decree, and
enforceable in the same manner as any
provision of such decree.

See also Code § 20-109 which provided in pertinent part:

[I]f a stipulation or contract signed by the
party to whom such relief might otherwise be
awarded is filed with the pleadings or
depositions, then no decree or order
directing the payment of alimony, suit
money, or counsel fee shall be entered
except in accordance with that stipulation
. . . .

amount requested.[2]    The judgment was duly docketed in the "lien docket book at page number 508."

After the entry of the default judgment, husband moved the trial court to vacate the judgment based on inadequate service of process.  In its January 12, 1984 order (1984 order), the trial court refused to set aside the judgment, but enjoined wife from collecting it so long as husband (1) made payments to wife pursuant to the PSA and (2) maintained a $50,000 letter of credit to her benefit.  Specifically, the 1984 order said:

> (b)  The said [husband] shall make his payments of spousal support to [wife] pursuant to the terms of the written Property Settlement Agreement between the parties dated December 31, 1973, which payments of spousal support shall be due and payable to [wife] on the first day of each month.  If any such payment has not been received by [wife] by the eighth day of the month when due, then counsel for [wife] shall notify counsel of record for [husband] of this fact in writing.  If thereafter [wife] or her counsel does not receive the payment which was due on the first of that month from [husband] by midnight on the tenth day next following the delivery of said written notice to [husband's] counsel of record, the injunction herein shall be automatically dissolved at that time without further hearing, and [wife] shall have the right to proceed to enforce her judgment forthwith and without further hearing and collect as a credit against said judgment the Fifty Thousand Dollars ($50,000.00) amount provided under the aforesaid letter

---

[2] If collected in full, it was to be placed in a trust and distributed in installments over thirty-seven years to wife, and if wife died or remarried, the remainder would be returned to husband.

of credit in accordance with the verified
notice procedure set forth in (a) above.

[Husband] shall receive credits so long as
the injunction is in effect, and the
judgment shall not run with interest.
[Husband] shall receive credit for all
payments made since the date of the judgment
as spousal support.

In the event [husband] fails to meet all of
the conditions above, then the judgment
shall be for the amount of monies then owing
with interest running from the original date
of the judgment, that is October 22, 1982.

Neither party appealed the 1984 order.

Husband made payments as required with no further court action. On April 14, 1999, husband's counsel notified wife's counsel that the judgment had been overpaid and requested it be released and marked satisfied. Husband's counsel represented that marking the judgment satisfied "in no way affects [husband's] ongoing obligation to pay spousal support." Based on the representation, wife's counsel released the judgment on April 30, 1999.

On June 14, 1999, husband's counsel notified wife's counsel that his client would not pay spousal support beyond October, 1999 because husband's company had gone bankrupt. Wife filed a motion for rule to show cause in the divorce case requesting that husband be held in contempt for violating an order of the court. The order to show cause cites as the basis for the rule both the final decree of divorce and the 1984 order. Husband filed a separate petition requesting that the trial court order

a refund because he had overpaid any support required pursuant to their PSA.  He contended that the PSA support requirements were merged into the default judgment entered at wife's request on their contract, which was later released as satisfied.

The trial court found that husband was not in contempt of court because he had made all spousal support payments due.

> It is the opinion of this Court that the effect of the [1984] Order on the [PSA] was as follows.  First, it reduced [husband's] spousal support obligation due under the Agreement to $429,565.00 . . . .
>
> Second, the [1984] Order merged [husband's] spousal support obligation into a final judgment, thereby eliminating any future actions for spousal support based upon the original [PSA].
>
> Third, the [1984] Order incorporated the payment methodology contained within paragraph six of the [PSA] entitled "Additional Support and Alimony."  No other provisions of the [PSA] were incorporated. The [1984] Order reads in pertinent part, "[t]he said [husband] shall make his payments of spousal support to [wife] pursuant to the terms of the written [PSA] between the parties dated December 31, 1973 . . . ."  As a result, [husband] was required to make payments on the $429,565.00 judgment as per the calculations set forth in the [PSA] until satisfied.
>
> \*     \*     \*     \*     \*     \*     \*
>
> [Husband's] obligation to continue paying spousal support to [wife] is terminated as a result of satisfying the Judgment.  A plaintiff may not reduce an obligation to a judgment, collect on the judgment in full, and then double dip by instituting another action based on the same obligation because he/she is unhappy with the amount received

in satisfaction.  To allow such proceeding
is inequitable and against better judgment.
[Husband] cannot be held in contempt for
discontinuing payments of spousal support.

The trial court next found that laches barred husband's request

for a refund of monies paid in excess of the judgment.

[Husband] has known or suspected that he was
making overpayments on the Judgment amount
for some seventeen years, and is just now
seeking to recover those monies. . . .  It
would work a grave injustice to require
[wife] to repay [husband] some $125,000.00
living on a fixed income . . . .

II.  MERGER AND TERMINATION OF SPOUSAL SUPPORT

Wife argues that the trial court erred in finding that her

suit for anticipatory breach of husband's duties under their PSA

merged his spousal support obligations into the final judgment

and, thus, precluded any future suits for additional spousal

support.  She contends that the October 22, 1982 judgment order

(1982 order) awarding her $429,565 for lifetime support was

modified by the later 1984 order enjoining enforcement because

the 1984 order did not say that husband's spousal support

obligation would end upon full payment of the judgment amount.

We disagree.

Initially, we note that the PSA at issue here was "filed

with the papers" in the parties' divorce.  It was never

"affirmed, ratified, or incorporated" into the final decree of

divorce and, thus, the trial court was constrained by

Code §§ 20-109.1 and 20-109 to enter no order in contravention of

the agreement.  As we said in Hering v. Hering, 33 Va. App. 368,

533 S.E.2d 631 (2000):

> [i]f the court accepts the agreement, its
> decree may merely approve, ratify or affirm
> the agreement, in whole or in part, without
> incorporating its provisions into the decree
> or ordering payment or compliance with its
> terms.  In that situation, the decree merely
> constitutes judicial approval of a private
> bilateral contract, and the provisions of
> the support agreement do not have the full
> force and effect of a court's decree and are
> not enforceable by the court's contempt
> powers.

Id. at 373, 533 S.E.2d at 633-34 (citations omitted).  "Property

settlement agreements are contracts; therefore, we must apply the

same rules of interpretation applicable to contracts generally."

Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985)

(citations omitted).  "Since the interpretation of a contract is

a question of law, we are not bound by the trial court's

conclusions on this issue, and we are permitted the same

opportunity as the trial court to consider the contract

language."  Garcia v. Enterprise Ford Tractor, Inc., 253 Va. 104,

107, 480 S.E.2d 497, 498-99 (1997).

In the instant case, wife pursued her contractual remedies

for enforcement.  Her election to sue for anticipatory breach of

the total amount due under their contract[3] quantified husband's

---

[3]     An anticipatory breach of contract is
one committed before the time has come when
there is a present duty of performance and is
the outcome of words or acts evincing an
intention to refuse performance in the
future. . . . [T]o constitute such an
"anticipatory breach," it must appear that
the party bound under a contract has
unequivocally refused to perform. . . .  This
is so because an anticipatory breach which
will support an action for breach of the
contract must go to the whole consideration
of the contract and must relate to the

remaining spousal support obligation at $429,565. This amount was reduced to a judgment at her request and, after full payment, was marked satisfied. However, we must now decide if wife's choice of remedy precluded her from further litigation because any future spousal support obligation was merged into the judgment.

The law of merger is well settled and applies to acceleration of contractual remedies. When a cause of action has been reduced to a judgment, the cause of action is merged into the judgment and cannot form the basis for future suits between the parties. In Equity Investors v. West, 245 Va. 87, 425 S.E.2d 803 (1993), a partnership obtained a judgment on six promissory notes and then sought to docket that judgment against the solvent general partners. In reviewing the viability of the doctrine of merger, the Supreme Court quoted Beazley v. Sims, 81 Va. 644, 648 (1886):

> "The judgment establishes in the most
> conclusive manner, and reduces to the most
> authentic form, that which had hitherto been
> unsettled. The cause of action thus

> essence of the contract, so far as the
> complaining party is concerned.

Michie's Jurisprudence Contracts § 76 (2001).

> Under the law in Virginia, the
> abandonment of a contract will give rise to
> an action for anticipatory breach. We said
> in Mut. R. Fund Ass'n v. Taylor, 99 Va. 208,
> 37 S.E. 854 (1901) that: "[W]hen one party
> to a contract has entirely abandoned it, or
> has absolutely refused to perform it, the
> other party may elect to sue on it without
> waiting for the time of performance to
> arrive."

Supervisors v. Ecology One, 219 Va. 29, 33, 245 S.E.2d 425, 428 (1978) (some internal citations omitted).

established and permanently attested, is said to merge into the judgment establishing it upon the same principle that a simple contract merges into a specialty. The cause of action, though it may be examined to aid in interpreting the judgment, <u>can never again become the basis of a suit between the same parties</u>. It has lost its vitality; it has expended its force and effect. All its power to sustain rights and to enforce liabilities has terminated in the judgment. It is drowned in the judgment and must henceforth be regarded as <u>functus officio</u>."

<u>Equity Investors</u>, 245 Va. at 89-90, 425 S.E.2d at 805. <u>See also</u> <u>Bates v. Devers</u>, 214 Va. 667, 670, 202 S.E.2d 917, 920 (1974) ("Merger occurs when a valid and final personal judgment for money is entered for plaintiff. His original cause of action is merged into the judgment and is extinguished. Plaintiff can maintain a subsequent action only on the judgment and not on the original cause of action."); <u>Jones v. Morris Plan Bank of Portsmouth</u>, 168 Va. 284, 291, 191 S.E. 608, 610 (1937) ("If suit is brought for a part of a claim, a judgment obtained in that action precludes the plaintiff from bringing a second action for the residue of the claim, notwithstanding the second form of action is not identical with the first, or different grounds for relief are set forth in the suit."); <u>Sands v. Roller</u>, 118 Va. 191, 192-93, 86 S.E. 857, 858 (1915) ("We are of the opinion that when the judgment was obtained . . . , it merged the entire contract upon which the suit was brought, and the plaintiff could not afterwards maintain a suit for another recovery under that contract.").

We agree with the trial court that wife, having chosen her remedy and reduced the amount of support owed her to a judgment, cannot now revive the contract and pursue another cause of

action.  While wife argues that the 1984 order created an additional obligation to pay support, this position is without merit.  The 1984 order did nothing to the amount of the underlying, docketed judgment, but simply enjoined certain enforcement methods if husband timely paid the amounts due under the PSA.  Thus, we hold that the trial court did not err in finding husband had satisfied his support obligations by paying in full the amount of the judgment and in ruling that he was not in contempt.

### III.  LACHES

Laches is "the neglect or failure to assert a known right or claim for an unexplained period of time under circumstances prejudicial to the adverse party."  Princess Anne Hills v. Susan Constant Real Est., 243 Va. 53, 58, 413 S.E.2d 599, 602 (1992).  The burden of proving laches and prejudice is upon the litigant asserting that defense.  Id.  See also Stewart v. Lady, 251 Va. 106, 465 S.E.2d 782 (1996).

> When a trial court considers the defense of laches, it does not apply an absolute rule such as a statute of limitations, but instead, the court examines each case in light of the particular circumstances.  Therefore, whether under the circumstances of a given case a claim is barred by laches is primarily a decision resting within the discretion of the trial court.  Absent an abuse of discretion, its decision will not be disturbed on appeal.

Morris v. Mosby, 227 Va. 517, 521, 317 S.E.2d 493, 496 (1984) (citations omitted).

Husband contends that the trial court abused its discretion in finding that laches barred his claim for overpayments made

after he satisfied the $429,565 judgment.  The record supports the trial court's finding that husband "has known or suspected" that he was making overpayments for seventeen years and took no action.  Husband addressed the issue of possible overpayments with his then counsel, Mr. Runkle, but took no action to correct any possible problem for over sixteen years.  Wife relied on and accepted the payments as proper.  To require her to pay back thousands of dollars after appellee's inaction would be both prejudicial and inequitable.  Finding no error, we affirm the trial court.

## IV.  Conclusion

For the reasons set forth above, we affirm the judgment of the trial court.

<u>Affirmed.</u>