PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CAROLINA POWER AND LIGHT
COMPANY,
*Plaintiff-Appellant,*

v.

DYNEGY MARKETING AND TRADE,
*Defendant-Appellee.*

No. 04-1604

CAROLINA POWER AND LIGHT
COMPANY,
*Plaintiff-Appellant,*

v.

DYNEGY MARKETING AND TRADE,
*Defendant-Appellee.*

No. 04-2197

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-02-600-BO(3); CA-02-600-BO)

Argued: May 25, 2005

Decided: July 20, 2005

Before WIDENER, WILKINSON, and NIEMEYER, Circuit Judges.

---

Dismissed and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkinson joined. Judge Wilkinson wrote a separate concurring opinion. Judge Widener wrote a separate opinion concurring in the judgment and dissenting.

**COUNSEL**

**ARGUED:** Robert Allen Long, Jr., COVINGTON & BURLING, Washington, D.C., for Appellant. Randall Maitland Roden, THARRINGTON, SMITH, L.L.P., Raleigh, North Carolina, for Appellee. **ON BRIEF:** Mark A. Ash, J. Mitchell Armbruster, SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL & JERNIGAN, L.L.P., Raleigh, North Carolina; Emily J. Henn, COVINGTON & BURLING, Washington, D.C., for Appellant. Daniel W. Clark, Kristopher B. Gardner, THARRINGTON, SMITH, L.L.P., Raleigh, North Carolina, for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

We consider here the scope of the general rule that an unresolved claim for attorneys fees does not prevent a judgment on the underlying claims from being a final decision under 28 U.S.C. § 1291. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988).

In an order dated April 6, 2004, the district court entered a "judgment" in which it determined that Carolina Power and Light Company ("CP&L") had breached a contract to purchase coal from Dynegy Marketing and Trade ("Dynegy") and awarded roughly $10 million in damages to Dynegy under the contract's liquidated damages provision. The April 6 "judgment" left unresolved, and reserved for "a later date," Dynegy's claim for damages under the contract's "legal costs" provision, under which the nonbreaching party was entitled to "reasonable out-of-pocket expenses incurred by it including legal fees, by reason of the enforcement and protection of its rights under [the contract]."

Treating the April 6 "judgment" as final and appealable, CP&L filed a notice of appeal on May 7, 2004, 31 days after the entry of the "judgment," in which it challenged the district court's $10 million award to Dynegy. Dynegy filed a motion to dismiss CP&L's appeal as untimely. *See* Fed. R. App. P. 4(a)(1)(A) (providing that an appeal

must be filed within 30 days after judgment). CP&L's first response was to file on June 10 a motion for an extension of time to appeal under Rule 58(c), which the district court denied on September 10, 2004. CP&L then took the position that the April 6 "judgment" was not final and appealable and that its appeal was premature. It now urges us "to stay" its appeal from that order, pending the district court's resolution of the "legal costs" claim. It filed a second appeal from the district court's September 10 order denying its motion for an extension of the time to appeal.

We conclude that the April 6 "judgment" was not a final decision under 28 U.S.C. § 1291, triggering the 30-day time limit for filing an appeal under Federal Rule of Appellate Procedure 4(a). Specifically, we hold that a claim for legal costs based on a contractual provision that is not limited to expenses incurred during the underlying litigation is an element of damages to be proved at trial under the substantive law governing the action, *see* Fed. R. Civ. P. 54(d)(2), 58(c), and that a judgment that leaves open such a claim is not final and appealable. Accordingly, we dismiss CP&L's appeal from the April 6 order as interlocutory and remand for further proceedings. We also dismiss CP&L's appeal from the September 10 order as moot.

I

CP&L and Dynegy entered into a contract dated August 22, 2001, under which CP&L agreed to purchase specific amounts of coal from Dynegy at predetermined prices. When Dynegy's financial rating declined in early 2002 and Dynegy failed to provide credit enhancements under the contract, CP&L declared Dynegy's financial condition to be a default event under the contract and declined thereafter to accept coal shipments from Dynegy. CP&L then commenced this action against Dynegy in North Carolina state court for a declaratory judgment that it had a right to terminate the contract. Dynegy removed the case to federal court under diversity jurisdiction and filed a counterclaim against CP&L for breach of contract and violation of North Carolina's Unfair Trade Practices Act.

The case proceeded to a bench trial, and after the close of CP&L's evidence, the district court granted Dynegy's Rule 52(c) motion, finding that CP&L was not entitled to terminate the contract early and

therefore had breached the contract in refusing to accept coal shipments from Dynegy. Dynegy then presented its evidence on damages, requesting an award of damages under two of the contract's remedial provisions. The first provision, which applied to the period of time *after* the nondefaulting party terminated the contract due to the other party's default, required CP&L to pay Dynegy's net losses and costs resulting from the termination of the contract. The second provision, which applied to the period of time *before* the nondefaulting party terminated the contract, entitled Dynegy to recover (1) "an amount equal to the positive difference, if any, obtained by subtracting the [market] [p]rice from the [contract] [p]rice"; (2) "reasonable additional transportation costs incurred by [the] [s]eller due to [the default]"; and (3) "[legal] [c]osts incurred by [the] [s]eller." The contract defined "legal costs" as "the reasonable out-of-pocket expenses incurred by [a party], including legal fees, by reason of the enforcement and protection of its rights under [the contract]."

After the presentation of evidence, the district court rendered a Memorandum Opinion, in which it ruled in favor of Dynegy on its breach of contract claim, awarding Dynegy $9,995,730, and in favor of CP&L on Dynegy's unfair trade practices claim. The court also deferred ruling on Dynegy's claim for "legal costs," directing the parties to submit briefs on that issue and explaining that it would issue a ruling on that claim "at a later date." Treating Dynegy's claim for "legal costs" as a collateral issue, the court entered judgment in favor of Dynegy on April 6, 2004, in the amount of $9,995,730.

On May 7, 2004, 31 days after entry of the April 6 "judgment," CP&L filed a notice of appeal "from the Judgment entered in this action on the 6th day of April, 2004." Shortly thereafter, CP&L also filed a motion to stay execution on the judgment, together with a supersedeas bond, which the district court granted.

Dynegy has filed a motion in this court to dismiss CP&L's appeal, asserting that the appeal was untimely filed under Federal Rule of Appellate Procedure 4(a)(1)(A) (providing that an appeal must be filed within 30 days of the judgment of the district court). Although CP&L had, up until Dynegy filed its motion, taken the position that the April 6 "judgment" was final, it reassessed its legal position and now argues that the district court's April 6 order was not, after all, a

final, appealable judgment. Because the 30-day period for filing a notice of appeal does not run until the entry of a final judgment, CP&L contends that its time limit for appealing the district court's judgment did not start running on April 6. It asserts that because the district court has yet to resolve the request for legal costs, the 30-day time limit still has not commenced. CP&L has requested that we stay its appeal from the April 6 order until the district court resolves Dynegy's claim for legal costs under the contract.

Thus, under neither party's theory would we reach the merits of CP&L's appeal at this time. Dynegy urges that we dismiss CP&L's appeal with prejudice because it was untimely; and CP&L urges, in essence, that we dismiss the appeal (or stay it) as interlocutory.

## II

In urging dismissal of CP&L's appeal with prejudice, Dynegy contends that its claim for "legal costs" is collateral to, and not part of, the merits of its breach of contract claim and that, under *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988), the unresolved attorneys fees issue did not prevent the April 6 judgment from being final on April 6, 2004. In *Budinich*, the Supreme Court considered whether a district court's decision on the merits of an employment compensation claim was final under 28 U.S.C. § 1291 notwithstanding an unresolved motion for attorneys fees. *See* 486 U.S. at 199. Finding the decision to be final, the Court explained that "[a]s a general matter, . . . a claim for attorney's fees is not part of the merits of the action to which the fees pertain" because "[s]uch an award does not remedy the injury giving rise to the action." *Id.* at 200.

CP&L contends that *Budinich* does not control here because Dynegy's claim for legal costs differs in significant respects from the claim for attorneys fees made in *Budinich*. CP&L points out that Dynegy requested legal costs pursuant to a contractual provision, whereas the plaintiff in *Budinich* requested attorneys fees based on a state statute. *See* 486 U.S. at 197. In addition, CP&L notes that the fee-shifting statute in *Budinich* applied only to attorneys fees incurred by the prevailing party in connection with an underlying action. *See id.* In contrast, CP&L argues, the legal costs provision in the contract on which Dynegy rests its claim is not premised on prevailing in an

underlying action. These differences, CP&L contends, make Dynegy's unresolved claim for legal costs in this case an integral part of the claim on the merits that must be resolved before appeal is taken.

We are thus presented with the issue of whether the April 6 "judgment," in which the district court deferred its ruling on Dynegy's claim for "legal costs," was a final decision under 28 U.S.C. § 1291 that was appealable under Federal Rule of Appellate Procedure 4(a). At bottom, this issue relates to our jurisdiction.

Section 1291 of Title 28 of the United States Code provides that "[t]he courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States." The label that a district court attaches to an order it issues does not control the question of whether the order is a final decision. *See, e.g.*, *Exchange Nat'l Bank v. Daniels*, 763 F.2d 286, 292 (7th Cir. 1985); *Page v. Preisser*, 585 F.2d 336, 338 (8th Cir. 1978). Rather, to determine whether a district court's order is a final decision we must determine whether it is a decision that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). Thus, a judgment on liability that does not fix damages is not a final judgment because the assessment of damages is part of the merits of the claim that must be determined. *See Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 742 (1976); *Republic Natural Gas Co. v. Oklahoma*, 334 U.S. 62, 68 (1948). But an unresolved motion to assess attorneys fees as costs to the prevailing party generally does not prevent a judgment on the merits from being final because it does not call into question a decision on the merits. *See* Fed. R. Civ. P. 58(c); *Budinich*, 486 U.S. at 202-03.

After *Budinich* was decided, Congress enacted § 315 of the Judicial Improvements Act of 1990, which explicitly authorized the Supreme Court — if there was any doubt that the Court had the authority — to define by rule "when a ruling of a district court is final for the purposes of appeal under section 1291." Pub. L. No. 101-650, § 315, 104 Stat. 5089, 5115 (codified at 28 U.S.C. § 2072(c)); *see also* Federal Courts Administration Act of 1992, Pub. L. No. 102-572, § 101, 106 Stat. 4506, 4506 (codified at 28 U.S.C. § 1292(e)) (giving the

Supreme Court the authority to "provide for . . . appeal[s] of . . . interlocutory decision[s]"). Shortly thereafter, the Supreme Court exercised its rule-making authority with the adoption, in 1993, of amendments to Rules 54 and 58 that clarified *Budinich*. The amendment to Rule 54 provides that "[c]laims for attorneys' fees and related nontaxable expenses shall be made by motion *unless the substantive law governing the action provides for the recovery of such fees as an element of damages* to be proved at trial." Fed. R. Civ. P. 54(d)(2) (emphasis added). The rule thus creates a division in the handling of attorneys fees claims between claims that are not part of the underlying substantive claim, which must be made by motion, and claims that are an element of damages, which presumably must be made by complaint. As an example of a claim falling in the latter category, the Advisory Committee Notes cite a claim for attorneys fees based on the "terms of a contract." Fed. R. Civ. P. 54 advisory committee's note to 1993 amendments.

Rule 58(c) which incorporates the Rule 54 amendment, addresses how claims for attorneys fees affect the entry of judgment. It provides that the "[e]ntry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees, except" that "[w]hen a timely motion for attorney fees is made *under Rule 54(d)(2)*, the court may act before a notice of appeal has been filed and has become effective to order that the motion [delay the time for appeal]." Fed. R. Civ. P. 58(c) (emphasis added). Thus, Rule 58 creates flexibility in entering a final judgment by authorizing a district court to treat *a motion* for attorneys fees either as a Rule 59 motion that delays the finality of judgment for appellate purposes or as a collateral matter to be disposed of after judgment. *See* Fed. R. Civ. P. 58 advisory committee's note to 1993 amendments. But that flexibility is provided only when an attorneys fees claim is made by motion — that is, when the claim is not part of the underlying substantive claim — and not when it is claimed through the complaint as an element of damages. Correspondingly, an unresolved claim for *substantive* attorneys fees under the complaint *does* prevent the entry of judgment. Because the flexibility granted by Rule 58 to treat a motion for attorneys fees as either collateral to the judgment or part of it does not apply when "the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial," Fed. R. Civ. P. 54(d)(2)(A), such claims must be regarded as part of

the merits of the judgment. We thus conclude that a district court decision that leaves unresolved a claim for attorneys fees that are sought as an element of damages under the substantive law is not a final decision within the meaning of 28 U.S.C. § 1291.

In the case before us, the substantive law governing the action — the contract between the parties — clearly provides "for the recovery of [legal costs] as an element of damages to be proved at trial." Fed. R. Civ. P. 54(d)(2)(A). *First*, the provision for legal costs falls under § 9.3 of the parties' contract, which instructs that "[t]he remedies set forth in this Section . . . shall be a Party's exclusive monetary *damages* for the other Party's failure to deliver or accept the quantities of Coal required by [the contract] prior to the Non-Defaulting Party's early termination due to an Event of Default." (Emphasis added). *Second*, legal costs are recoverable as a remedy for the buyer's failure "to accept all or any part of the quantity of Coal to be delivered under [the contract]." As such, the condition precedent to recovering legal costs is a breach of contract by the buyer, not the successful litigation of a claim by the seller. Just as the seller must prove a breach by the buyer to recover the difference between the contract price and the market price or transportation costs, so too must it prove such a breach to recover its legal costs. And, just as the difference between the contract price and the market price and the costs of transportation function as elements of damages, so too do legal costs. *Third*, unlike a right to nonsubstantive attorneys fees that are collateral to the merits of an action, which does not accrue until the litigation is actually brought, the seller's right to legal costs under the contract between the parties in this case arises as soon as the buyer rejects a delivery of coal.

In short, we conclude that Dynegy's claim for legal costs is a substantive claim in that it is based on a contract that provides for the recovery of fees as an element of damages to be proved at trial. *See* Fed. R. Civ. P. 54(d)(2)(A), 58(c). Thus, a judgment that leaves open such a claim for fees is not final under 28 U.S.C. § 1291, and therefore not appealable under Federal Rule of Appellate Procedure 4(a).

### III

Although we rely on Rules 54 and 58, as amended in 1993, to inform our understanding of 28 U.S.C. § 1291, application of

*Budinich*, which was decided before those amendments, likewise leads us to conclude that the unresolved issue of the legal costs claim in this case prevented the April 6 order from being a final judgment. Unlike the circumstances in *Budinich*, where the attorneys fees award depended on whether the claimant was a prevailing party in an underlying cause of action, the attorneys fees here would be awarded as part of the damages for Dynegy's breach of contract claim. The resolution of such a claim is not collateral to the action, but part of it to be resolved under the substantive law governing the outcome of the action.

The fee-shifting statute in *Budinich* provided that attorneys fees shall be awarded "'in favor of the winning party, to be taxed as part of the costs of the action.'" 486 U.S. at 197 (quoting Colo. Rev. Stat. § 8-4-114 (repealed 2003)). In contrast, the contract here authorizes an award of "legal costs" to the seller if the buyer "fails to accept all or any part of the quantity of Coal to be delivered" and to the buyer if the seller "fails to deliver all or any part of the quantity of Coal to be delivered hereunder." Thus, when the district court eventually addresses Dynegy's request for legal costs, the court will have to determine whether CP&L failed to accept coal that it was required to purchase, not whether CP&L prevailed in its breach of contract claim.

The difference is important because claims, such as the one brought in *Budinich*, that are based on prevailing in underlying litigation will never involve "stand-alone" claims for attorneys fees. A "stand-alone" claim for attorneys fees is one that can be brought as an independent claim, such as, for example, a claim brought by an attorney to recover fees from a former client pursuant to a retainer agreement. When a stand-alone claim for attorneys fees remains unresolved, a district court decision is not final for purposes of appeal. For example, if an attorney were to bring suit to recover fees owed to him by a client, we certainly would not say that the district court decision was final before the court determined the amount of fees to which the attorney was entitled. *See, e.g.*, *Liberty Mut. Ins. Co.*, 426 U.S. at 742; *Republic Natural Gas Co.*, 334 U.S. at 68. When the governing law authorizes attorneys fees on some basis other than prevailing-party status, a claim for attorneys fees need not be linked to underlying litigation and therefore might be a stand-alone claim. In turn, the possi-

bility that an unresolved claim will amount to a stand-alone claim for attorneys fees precludes the entry of a final decision.

Although Dynegy's claim for legal costs in this case, when fleshed out during litigation, will probably include costs incurred mostly in connection with this litigation, the authorizing contractual provision is nonetheless broader and leaves room for Dynegy to seek reimbursement for legal costs incurred *at any time* that CP&L rejected a shipment of coal. In other words, the claim could include what would amount to a stand-alone claim for attorneys fees. And, just as an attorneys claim seeking to recover past-due fees from a client would not be ripe for appeal until the district court determined whether the attorney was entitled to the fees, so too would Dynegy's claim not be finally determined until the district court addressed the claim for legal costs.

Moreover, the practical justification for treating a claim for attorneys fees as a collateral issue does not hold when the authorization for such fees is based on something other than prevailing-party status in the underlying litigation. When the law authorizes a fee award as part of the costs of the prevailing party, delaying the award of such fees until after appeal makes sense because the district court's assessment of which party prevailed might change depending on the outcome of the appeal. *See White v. New Hampshire Dep't of Employment Security*, 455 U.S. 445, 451-52 (1982) (noting that when a statute provides for attorneys fees only to a prevailing party, "the court's decision of entitlement to fees will . . . require an inquiry separate from the decision on the merits — an inquiry that cannot even commence until one party has 'prevailed'"). In contrast, when the controlling statute or contract provides for attorneys fees on some basis other than prevailing-party status in the underlying litigation, the outcome of any appeal should not affect the district court's fee determination.

In addition, when a claim for attorneys fees is based on something other than prevailing-party status in the underlying litigation, the factual findings necessary to dispose of the claim might affect the district court's assessment of other parts of the parties' claims, thus making it desirable to delay appeal until those findings are made. Here, for example, legal costs are available only if the buyer failed to accept

coal "prior to the Non-Defaulting Party's early termination due to an Event of Default." When the district court assesses legal costs, it will have to determine the date of termination, which, in turn, might affect the court's earlier assessment of damages "resulting from the termination of [the contract]."

Finally, we note that the *Budinich* Court recognized that treating a claim for attorneys fees as a collateral issue makes sense only when the fees are sought as costs for prosecuting an underlying litigation. Thus, the Supreme Court held that "a claim for attorney's fees is not part of the merits of the action *to which the fees pertain*." 486 U.S. at 200 (emphasis added); *see also Gleason v. Norwest Mortgage, Inc.*, 243 F.3d 130, 137-38 (3d Cir. 2001) (distinguishing between contractual attorneys fees based on prevailing in litigation from those based on some other grounds, and classifying the former as collateral, and the latter as substantive); *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 520-23 (5th Cir. 1994) (holding that a claim for attorneys fees under an attorney retainer contract was not collateral because it was brought as a separate claim and the claimant's rights "[were] not contingent on the outcome of the litigation").

Dynegy argues that, by defining "legal costs" as "the reasonable out-of-pocket expenses incurred . . . , including legal fees, by reason of the enforcement and protection of . . . rights under [the contract]," the contract effectively limits awards of legal costs to the prevailing party. According to Dynegy, "the use of the term 'rights' limits recovery to circumstances where the Party is vindicated, i.e. it has 'rights' that are properly enforceable under the circumstances." Although Dynegy may have a point insofar as a party will be able to satisfy the condition precedent to recovering legal costs — that is, that the other party failed either to deliver or to accept coal — in exactly the circumstances in which the claimant can also "prevail" in a breach of contract claim, that coincidence does not mean that Dynegy's claim is *based* on being a prevailing party. Rather, Dynegy's claim is *based* on CP&L's failure to accept coal, an issue that goes directly to the merits of the case. By definition, therefore, the claim for such legal costs is not collateral, but substantive, in that it depends on the substantive law controlling the action.

At bottom, when a contract provides for an award of attorneys fees or legal costs, not as costs to the prevailing party, but as an element

of damages, the grant or denial of such an award is a substantive issue that must be addressed before appeal is taken. This distinction was not only the basis of decision in *Budinich* but also the essence of the 1993 amendments to Rules 54 and 58.

We recognize that the desirability of maintaining a brighter-line jurisdictional rule than we have articulated has led more than one of our sister circuits to treat contractual awards of attorneys fees as collateral, without considering whether the contract at issue provided such awards as an element of damages or as costs to the prevailing party. *See, e.g.*, *U.S. ex rel. Familian Northwest, Inc. v. RG&B Contractors, Inc.*, 21 F.3d 952, 955 (9th Cir. 1994) (finding that the "need for a bright-line rule" justifies treating contractual attorneys fees as collateral); *First Nationwide Bank v. Summer House Joint Venture*, 902 F.2d 1197, 1199 (5th Cir. 1990) (adopting a "bright line" rule that attorneys fees sought under a contract are collateral). *But see, e.g.*, *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. Medpartners, Inc.*, 312 F.3d 1349, 1355 (11th Cir. 2002) (holding that "a request for attorneys' fees pursuant to a contractual clause" is substantive and must be resolved before a judgment becomes final); *Justine Realty Co. v. Am. Nat'l Can Co.*, 945 F.2d 1044, 1048-49 (8th Cir. 1991) (holding that, when a party seeks to recover attorneys fees as "a portion of the contractual benefits in issue," the judgment is not final before the court resolves the issue of attorneys fees). But whatever gains in predictability such a rule would bring would come only at the cost of an increased number of piecemeal appeals and an erosion of the well-established rule that a judgment is not final until damages are fixed. *See, e.g.*, *Liberty Mutual Ins. Co.*, 424 U.S. at 742.

## IV

For the foregoing reasons, we deny Dynegy's motion to dismiss CP&L's appeal from the April 6 order with prejudice on the ground that it was untimely filed because the time for taking an appeal never began. For the same reason, however, we do not reach the merits of that appeal. Rather, we dismiss it as interlocutory and remand for further proceedings. We similarly dismiss CP&L's appeal from the district court's September 10 order because it is mooted by our disposition of the primary appeal.

*DISMISSED AND REMANDED*

WILKINSON, Circuit Judge, concurring:

I am pleased to concur in Judge Niemeyer's fine opinion. In this case, the contract is perfectly clear that the attorneys' fees are a part of damages, as the majority opinion well illustrates. *See ante* at 8. The attorneys' fees provision is in the remedies section of the contract, and it is not tied to the outcome of litigation. Rather, CP&L must pay the fees if CP&L breaches the contract by failing to accept the specified amounts of coal. Indeed, the fee provision is simply the third of three damages provisions; it is adjacent to both the damages provision for a possible change in market price and the damages provision for additional transportation costs. As such, the attorneys' fees are part of the total damage award, and the trial judge must determine that amount before the decision is final pursuant to 28 U.S.C. § 1291.

Many cases, by contrast, will not be this clear. Rather, the contractual language will often be ambiguous as to whether attorneys' fees are remedial, i.e., an element of damages, or, instead, are to be awarded to a prevailing party as costs of the underlying action. Further, the language may also suggest that the attorneys' fees are a hybrid of both damages and costs. In these cases, the attorneys' fees claim is collateral, and a party can immediately appeal before the trial court decides that claim.[1]

This approach balances the two competing concerns of the case. First, in those cases, like this one, in which attorneys' fees are clearly remedial, an appeal should not be allowed until all the factual findings are made, including a determination regarding the attorneys' fees provision. The concern of piecemeal litigation that § 1291 was designed to prevent is most relevant when the attorneys' fees are obviously part and parcel of a remedy for damages. Second, in ambiguous or hybrid cases, an appeal should be immediately allowed. In these cases, the reasons underlying the *Budinich* rule predominate. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202-03 (1988). That is, the danger remains that the district court's resolution of the attorneys'

---

[1]Similarly, contractual provisions that are ambiguous or hybrid also fit within Rule 54(d)(2)(A) of the Federal Rules of Civil Procedure because they do not clearly provide for the recovery of the fees as an element of damages so that the attorneys' fees claim should be made by motion.

fees claim will go for naught if the appellate court finds that a different party should prevail.[2] Further, when the attorneys' fees provision contains any ambiguity or is a hybrid, the importance of having a bright-line jurisdictional rule increases because the level of uncertainty has correspondingly increased. After all, "[t]he time of appealability, having jurisdictional consequences, should above all be clear." *Id.* at 202.

This need for clarity commends the holdings of our sister circuits — that contractual attorneys' fees provisions are always collateral — in cases where the nature of a contractual attorneys' fees provision admits of any doubt. *See, e.g.*, *United States ex rel. Familian Northwest, Inc. v. RG & B Contractors, Inc.*, 21 F.3d 952, 954-55 (9th Cir. 1994) (holding that attorneys' fees are always collateral for the purposes of appealability); *Continental Bank, N.A. v. Everett*, 964 F.2d 701, 702-03 (7th Cir. 1992) (same); *First Nationwide Bank v. Summer House Joint Venture*, 902 F.2d 1197, 1199-1200 (5th Cir. 1990) (same). Unfortunately, unlike statutes, contracts have infinite variety and apply only to the parties to the contract; they are not as susceptible to an inviolable bright-line rule as statutes are. Nevertheless, to ensure clarity for future litigants, it is possible to set forth a rule for the inevitable cases involving ambiguous or hybrid contractual provisions. In such cases, and indeed in all cases, any fee claim tied to the costs of the underlying litigation in a contractual dispute should be regarded as collateral.

---

[2]My brother Widener indicates some displeasure with the unanimous *Budinich* decision, but, as inferior federal judges, we are hardly free to disregard it. Further, contrary to my good colleague's protestations, never allowing an immediate appeal could actually lead to wasteful litigation, depending on the nature of the contractual provision. If an appellate court reverses the district court's determination as to who prevailed, the district court's attorneys' fees determination becomes unnecessary (if the contractual provision provided for fee shifting in only one direction) or will have to be repeated (if the contractual provision provided for fee shifting in either direction). Even if the appellate court finds that the prevailing party at the district court level should have only partially prevailed, that may also necessitate reconsideration of any fee award. In sum, Judge Widener and I could not agree more on the desirability of limiting litigation, but the hope that a never-collateral view of contractual fee provisions will actually achieve that goal seems to me illusory.

WIDENER, Circuit Judge, concurring and dissenting:

I concur in the result. With respect, however, I do not agree with a part of the reasoning of either of the other opinions.

I think the correct rule is stated in *Brandon, Jones, Sandall, Zeide v. Medpartners*, 312 F.3d 1349, 1355 (11th Cir. 2002). The court in that case stated the rule as follows:

> In this Circuit, a request for attorneys' fees pursuant to a contractual clause is considered a substantive issue; and an order that leaves a substantive fees issue pending cannot be "final."

First, both the majority opinion and the other concurring opinion imply that attorneys' fees may be a part of the taxable costs of the case when agreed to by contract. I doubt that such an agreement is valid absent statutory authority.

That aside, the reasons given for our decision today are bound to result in an even greater multiplication of the piecemeal appeals which have come about since the decision of the Court in *Budinich v. Beckton, Dickson & Co.*, 486 U.S. 196 (1988). Assuming only the solvency of the parties, our decision today offers monetary advantage to one of the parties, as well as to the attorneys, for failure to agree to, or to decide, the question of attorneys' fees at the time the merits of the case are disposed of. Not only one of the parties, but the attorneys for both sides will profit by an appeal with its consequent attorneys' fees. Public policy should encourage the ending of litigation, not its continued existence, in my opinion.