AMEC CIVIL LLC, Appellant,

v.

MITSUBISHI INTERNATIONAL CORPORATION., Appellee.

No. 06–CV–1420.

District of Columbia Court of Appeals.

Argued Dec. 4, 2007.

Decided Dec. 28, 2007.

Paul W. Killian, with whom Thomas P. McLish and Ephraim Wernick were on the brief, Washington, for appellant.

E. Duncan Getchell, with whom Marshall Beil and Lauren Rosenblatt were on the brief, for appellee.

Before FARRELL, KRAMER, and FISHER, Associate Judges.

FARRELL, Associate Judge:

The issue before us, governed by Virginia law, is whether *res judicata* barred appellant's action for attorney's fees filed in the Superior Court of the District of Columbia after appellant had withdrawn the claim from underlying breach-of-contract litigation in Virginia, without obtaining either agreement by appellee or authorization by the court to defer the claim to later proceedings. We hold, with the trial judge, that appellant was precluded in these circumstances from pursuing its

claim for attorney's fees in a separate action.

## I.

AMEC Civil LLC (hereafter AMEC) sued Mitsubishi International Corp. (MIC) in Virginia state court alleging breach of contract after MIC failed to supply steel for highway bridges under the parties' contract related to a construction project in Virginia. The jury returned a verdict for AMEC and awarded damages for breach, an award MIC paid without taking an appeal.

The parties' contract also contained an indemnification provision, which provided in relevant part:

> Without limitation of any other right or remedy available to Purchaser hereunder or at law, Seller shall protect, defend, indemnify and hold Purchaser and Owner harmless from and against any and all claims, losses, damages, liabilities, fines, penalties, costs and expenses (including attorneys' fees) directly or indirectly arising out of (i) Seller's refusal or failure to perform or observe any of Seller's agreements, undertakings, warranties or obligations referred to hereunder, including, without limitation, the delivery, furnishing or utilization in the Project of any non-conforming materials and/or labor.... This indemnity shall not apply to the extent that the matter is caused by the negligent act or omission of any or all of the persons or entities indemnified hereunder.

Accordingly, in AMEC's suit for breach of contract, the complaint had included a request for attorney's fees as part of its *ad damnum* clause.[1] During trial, however, AMEC withdrew the claim for attorney's

fees after a brief colloquy on the subject, and the jury heard no evidence about fees and was not instructed on the issue.

Instead, after receiving judgment on the breach of contract claim, AMEC brought suit in the Superior Court of the District of Columbia seeking to enforce the attorney's fee provision. MIC moved for summary judgment, arguing that AMEC was splitting its claims in a manner that Virginia law prohibits, and that its failure to pursue the claim for legal fees to judgment in the Virginia suit barred recovery under principles of *res judicata*. After a hearing, the trial judge agreed, stating that AMEC had "had a full opportunity to submit any evidence they wanted [on the fee issue] at trial and could have pursued its claim to verdict."

■ This appeal by AMEC followed. We review both the grant of summary judgment and the trial court's application of *res judicata* principles *de novo*. *See Carrollsburg v. Anderson*, 791 A.2d 54, 58 (D.C.2002); *Osei–Kuffnor v. Argana*, 618 A.2d 712, 713 (D.C.1993). The parties are in accord that, by operation of the contract, Virginia law governs the substantive issues presented.

## II.

■ Virginia law requires a litigant raising the defense of *res judicata* to establish four elements: (i) "identity of the remedies sought"; (ii) "identity of the cause of action"; (iii) "identity of the parties"; and (iv) "identity of the quality of the persons for or against whom the claim is made." *Davis v. Marshall Homes, Inc.*, 265 Va. 159, 576 S.E.2d 504, 506 (2003). *Res judicata* bars the assertion in a subsequent proceeding not only of all claims

1. The complaint sought "[f]ull indemnity for any and all costs and expenses, including attorney[']s fees, incurred as a result of Mitsu-bishi's refusals and failures to perform or observe its obligations under the contract."

actually brought in an earlier proceeding, but of claims constituting the same cause of action that could have been brought in the earlier proceeding. *See Lofton Ridge, LLC v. Norfolk Southern Railway Co.,* 268 Va. 377, 601 S.E.2d 648, 650 (2004) ("When the second suit is between the same parties as the first, and on the same cause of action, the judgment in the former is conclusive of the latter, not only as to every question which was decided, but also as to every other matter which the parties might have litigated and had determined...").

■ In dispute here is primarily the question of whether AMEC's claim for attorney's fees is part of "the same cause of action" as its underlying claims for breach of contract. In our view, Virginia law beginning with *Sands v. Roller,* 118 Va. 191, 86 S.E. 857 (1915), provides a clear answer. *Sands,* like this case, involved successive actions for breach of agreement (there failure to make payments due on promissory notes) and for related legal fees and expenses. As the Virginia Supreme Court described the sequence: "The present controversy arises from a suit brought ... after the judgment was rendered [for the plaintiff on the contract], and since it was satisfied, to recover the fees and expenses incurred by the plaintiff in obtaining the judgment and certain alleged expenses incurred in enforcing its payment." *Id.* at 858. The court disposed of the suit in one paragraph:

> We are of opinion that, when the [original] judgment was obtained ..., it merged the entire contract upon which the suit was brought, and the plaintiff could not afterwards maintain a suit for another recovery under that contract. The alleged fees and expenses were provided for in the contract which was reduced to judgment. That cause of action can never again become the basis of

a suit between the same parties. It has lost its vitality; it has expended its force and effect. All its power to sustain rights and enforce liabilities has terminated in the judgment. It is drowned in the judgment, and must henceforth be regarded as *functus officio.* ... [S]uch contract and all rights under it ceased to exist and the judgment became the only and superior evidence of the defendant's liability.

*Id.* (citations and internal quotation marks omitted).

■ *Sands* thus teaches that a claim for legal fees based on a contract is part of the "cause of action" for breach of the underlying contract provisions, and ordinarily must be pursued there or will be extinguished "in the judgment." *See Republic Ins. Co. v. Culbertson,* 717 F.Supp. 415, 419 (E.D.Va.1989) (rejecting, as contrary to *Sands,* claim that suit for attorney's fees incurred after judgment "involve[d] a new cause of action, separate from the [underlying] cause"). AMEC argues, nonetheless, that *Sands* did not decide our case because the obligation to pay fees there did not depend on the outcome of the underlying claim of breach; it was conditioned (in the words of the promissory notes) only on "any litigation ensu[ing] to holder." Critical for AMEC is the fact that its indemnity agreement with MIC hinged an award of fees on a determination that MIC had "refus[ed] or fail[ed] to perform or observe any of Seller's agreements"—it was, AMEC argues, the equivalent of a "prevailing party" clause, *see, e.g.,* FED.R.CIV.P. 54(d), under which the issue of fees arises only post-judgment. See discussion, *infra,* part III. However, although *Sands* recited the counsel fees provision of the contracts in dispute there, it attached no significance to their language other than to say that "fees were provided for in the contract which was reduced to

judgment," and were merged ("drowned") therein. Nothing in *Sands* implies that a different rule would have pertained if the language had required the holder to prove breach (as he in fact did) before being entitled to attorney's fees.

■ *Sands* was subsequently cited by the Court of Appeals of Virginia in *Bazzle v. Bazzle,* 37 Va.App. 737, 561 S.E.2d 50, 55 (2002), for the "well settled" principle that "[w]hen a cause of action has been reduced to a judgment, the cause of action is merged into the judgment and cannot form the basis for future suits between the parties." Then, in *Lee v. Mulford,* 269 Va. 562, 611 S.E.2d 349 (2005), the Virginia Supreme Court again considered the relation between an underlying cause of action (again a suit on a promissory note) and a request for attorney's fees based on the contract, and recognized an important but limited qualification on the merger principle. Lee had sued for breach of the note and sought attorney's fees "as part of his claim for damages," but effectively withdrew the claim because "[h]e offered no evidence to the jury in support of an award of attorney's fees," *id.* at 351, and instead sought post-judgment to claim his fees by a separate motion. He argued that it was "customary to argue the issue of fees post-trial." *Id.* The Virginia Supreme Court rejected this appeal to "local custom and practice." It explained that "[w]e are aware of many cases in which the parties, with the concurrence of the trial court, have bifurcated the fact-finding process," *id.* (citing Virginia appellate decisions), but that "[i]n this case there is no such prior agreement between the parties that was approved by the trial court" reserving the attorney's fee issue to later determination. *Id.* Again noting Lee's "conce[ssion] that there was no express agreement with approval of the trial court to bifurcate the

factfinding process," *id.,* the court concluded:

> Absent agreement of the parties with the concurrence of the court, or pursuant to contract or statute with specific provisions, a litigant is not entitled to bifurcate the issues and have the matter of attorney's fees decided by the trial court in post-verdict proceedings.

*Id.* at 352.

■ *Sands* and *Lee* together announce what appears to be an unequivocal principle of Virginia law that a "claim for attorney's fees [is] merged into the original judgment and may not be the subject of a later suit" or proceeding, *In re Chen,* 351 B.R. 355, 363 (Bankr.E.D.Va.2006) (citing *Sands* and *Lee* ), unless the parties have agreed otherwise "with the concurrence of the court." *Lee,* 611 S.E.2d at 352. AMEC, however, disputes whether *Lee* in fact requires (at a minimum) consent of the other party to deferral of a claim for fees. It views as pivotal to *Lee* the fact that the fee issue "was submitted to [the] jury and the jury rendered a judgment," *id.,* making that case irrelevant to MIC's *res judicata* claim based on AMEC's failure to pursue a "matter which the parties *might have* ... had determined" in the original action. *Lofton Ridge, LLC,* 601 S.E.2d at 650 (emphasis added). But here again (as in distinguishing *Sands* ) AMEC reads the Virginia decision too narrowly. The jury awarded Lee no attorney's fees because he had presented no evidence that he had incurred any *and* he failed to withhold that contract issue from the jury, which would have required Mulford's consent. (The court specifically noted Mulford's statutory right to have the fee issue, as part of Lee's claim for damages, tried to a jury. *See* 611 S.E.2d at 352.) It was that failure to obtain "agreement of the parties with the concurrence of the court," *id.,* not the jury's negative award as such,

that the Virginia court held precluded Lee from splitting his cause of action and litigating the fee issue after judgment.

## III.

AMEC does not dispute that MIC said nothing in court amounting to an express agreement to bifurcate issues before AMEC withdrew its claim for attorney's fees from submission to the jury. It argues, however, that this was unnecessary because the indemnity agreement itself served to postpone consideration of the issue until after judgment on the underlying suit. *See id.* (bifurcation permitted "pursuant to [a] contract"). As pointed out earlier, AMEC likens the fee provision here—conditioning recovery of legal fees on its having first proved MIC liable for breach—to a "prevailing party" clause in a contract (or statute) that normally contemplates entitlement to legal fees being determined in "a separate, later action." *U.S. Indus., Inc. v. Blake Constr. Co.*, 246 U.S.App.D.C. 326, 334, 765 F.2d 195, 203 (1985). In our view, however, Virginia would not construe the indemnity provision here in that manner. The agreement, to start with, does not use the phrase "prevailing party," but rather the claim for indemnity runs only against MIC, with no indication that a breach by AMEC would trigger the same indemnification duty the contract places on MIC. Moreover, it does not condition a fee award on an antecedent judgment, but at most on a prior finding that MIC refused or failed to comply with the contract requirements. *Compare* FED. R.CIV.P. 54(d)(2)(A) (claims for attorneys' fees by "prevailing party" must be filed within 14 days "after entry of judgment"). In *Coady v. Strategic Res., Inc.*, 258 Va. 12, 515 S.E.2d 273 (1999), construing an indemnity clause somewhat broader than this one, the Virginia Supreme Court wrote that "[t]here is nothing in [its] language ... that hinges the allowance of attorney's fees and costs upon a determination whether [one party] was the prevailing party or not, was a winner or not, or was given a final judgment or not." *Id.* at 275. Here, nothing precluded AMEC from suing for damages, including related legal expenses, as soon as—in the contract language—it incurred any "losses [or] damages from MIC's refusal or failure to perform" as required: its right to recover those expenses did not depend on a prior judgment.

In *Kraft Foods N. Am. v. Banner Eng'g & Sales, Inc.*, 446 F.Supp.2d 551 (E.D.Va. 2006), against the background of Virginia contract law, the District Court made this distinction apparent. The plaintiff-appellant there, relying on an indemnity provision entitling it to "all damages ... and/or expenses (including attorneys' fees) ... resulting ... from any defect in the goods purchased" under the contract, sought attorneys' fees after judgment even though it had "failed to prove a contingency fee arrangement or otherwise present evidence of attorneys' fees at trial." *Id.* at 578. The court rejected the request, applying federal Rule 54's authorization of attorneys' fees as costs to a prevailing party "*unless* the substantive law requires those fees to be proved at trial as an element of damages." FED.R.CIV.P. 54(d)(2)(A) (emphasis added). "In this case," the court said, "the indemnification clause did not provide for attorney's fees to be paid to the prevailing party," but rather "provided for attorney's fees as an element of damages." 446 F.Supp.2d at 578. Thus, the plaintiff had "had its opportunity under Rule 54 to prove its attorney's fees at trial, and chose not to do so"; nor had it obtained "agree[ment of the parties] to litigate the matter of ... fees after the trial on the [underlying] claim"; and thus it "lost its opportunity to prove its entitlement to attorney's fees." *Id.*;

see also *Carolina Power & Light Co. v. Dynegy Mktg. & Trade,* 415 F.3d 354, 359–61 (4th Cir.2005) (where seller's "legal costs [were] recoverable as a remedy for the buyer's failure 'to accept all or any part of the . . . Coal to be delivered under [the contract],' . . . the condition precedent to recovering legal costs [was] a breach of contract by the buyer, not the successful litigation of a claim by the seller"; those costs "function[ed] as elements of the damages" and were not dependent on "prevailing-party status").

██ AMEC further argues that, even if MIC did not expressly agree to bifurcation of the issues, it did so impliedly in court when it stood mute as AMEC's counsel explained that the claim for attorney's fees would be "coming out in this case," *i.e.,* that no evidence of attorney's fees was "going back to the jury." Under Virginia law, a party may indeed waive the affirmative defense of *res judicata* by "either expressly or impliedly consenting to separate suits on a single cause of action," *Gary Steel Prods. v. Kitchin,* 197 Va. 471, 90 S.E.2d 120, 123 (1955), and AMEC asserts that, at the least, a triable issue of fact exists of whether MIC impliedly waived objection to its decision to defer the fee claim to later.

However, Virginia law on waiver or "acquiescence" in this context is not toothless. *See Bill Greever Corp. v. Tazewell Nat'l Bank,* 256 Va. 250, 504 S.E.2d 854, 858

(1998). We have already seen that, in its latest pronouncement on the issue of splitting attorney's fees from the rest of an action, the Virginia Supreme Court has required both "agreement of the parties" *and* "concurrence of the court." *Lee,* 611 S.E.2d at 352 (emphasis added). But even if agreement alone sufficed, the court has further said that waiver in the form of "acquiescence" to issue-splitting requires "both knowledge of the facts basic to exercise of the right waived and an intent to waive the right," in particular that "the circumstances [must] make it clear that the defendant was aware that additional claims could be asserted against him later." *Bill Greever Corp.,* 504 S.E.2d at 858. Here, AMEC points to no evidence other than MIC's silence—*i.e.,* it made "no objection whatsoever" to the withdrawal—(Brief for AMEC at 18)—to show that MIC "inten[ded]" to relinquish its settled right to have all damage claims against it brought in a single action. Moreover, the lone and elliptical statement by AMEC's counsel that attorney's fees were "to be part [of the claim], if there's breaches, but it's coming out in this case" is not *"clear"* evidence that MIC was even "aware that additional claims could be asserted against [it] later," particularly against a background of Virginia law disfavoring that course in the case of attorney's fees. In sum, AMEC presented no triable issue in the Superior Court of implied consent to deferral of its claims for fees.[2]

---

**2.** AMEC argues, relatedly, that its withdrawal of the fee claim was "presumptively without prejudice" under Virginia law, and that "it was MIC's burden to show otherwise" (Br. for AMEC at 17). The cases we have discussed, from *Sands* through *Lee,* make that argument untenable. Although MIC had the burden to establish the elements of the *res judicata* defense, *Scales v. Lewis,* 261 Va. 379, 541 S.E.2d 899, 901 (2001), proving that AMEC's withdrawal of its claim was "with prejudice" was not an element of that defense; rather, AMEC had to present evidence of an agreement to split the cause of action, which it failed to do. *Virginia Concrete Co. v. Fairfax,* 197 Va. 821, 91 S.E.2d 415 (1956), and *Alexandria Drafting Co. v. Norwitz,* 32 Va. Cir. 27 (1993), do not help AMEC. *Virginia Concrete* stands only for the proposition that a dismissal with prejudice operates as *res judicata* in a subsequent suit between the parties, 91 S.E.2d at 418–19, and is further inapt because there had been no final judgment in the earlier case between the parties there (*i.e.,* the entire suit there had been dismissed, not

## IV.

Endeavoring "to make our own determination of what the ... [Virginia Supreme Court] would probably rule in a ... case" similar to this, *Atkins v. Indus. Telecomms. Ass'n*, 660 A.2d 885, 888–90 (D.C. 1995),[3] we conclude that AMEC, having obtained neither approval from the trial court nor agreement with MIC to defer its claim for attorney's fees, was obliged to present the claim as part of its damages in the single cause of action for breach of contract, and failed to do so. Consequently, *res judicata* barred its attempt to relitigate the issue of attorney's fees in the Superior Court.

*Affirmed.*

---

an individual claim). *Alexandria Drafting*, for purposes here, holds merely that when a party asks for and receives a non-suit of its case, thus withholding the case from the jury, there is no merger of all claims in a final judgment. *See* 32 Va. Cir. at 29–30 (citing Virginia Code § 8.01–380: the "Virginia non-suit statute"). That case has nothing to do with the issues of bifurcation and failure to obtain agreement or court approval to defer resolution of a claim for attorney's fees.

3. Neither party requested that we certify the issues of law presented here to the Virginia Supreme Court, *see* D.C.Code § 11–723 (2001), and we are not, in any event, persuaded that would be a prudent use of judicial resources in this case.