COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Beales and O'Brien
Argued at Norfolk, Virginia

NEWPORT NEWS SHIPBUILDING &
 DRY DOCK CO., N/K/A
 HUNTINGTON INGALLS INCORPORATED

                                                   OPINION BY
v.       Record No. 1183-16-1         JUDGE ROBERT J. HUMPHREYS
                                               FEBRUARY 28, 2017
WARDELL ORTHOPAEDICS, P.C.

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

> Bradley D. Reeser (Jonathan H. Walker; Christopher R. Hedrick;
> Mason, Mason, Walker & Hedrick, P.C., on briefs), for appellant.
>
> Kira A. Cook (Philip J. Geib; Philip J. Geib, P.C., on brief), for
> appellee.

Newport News Shipbuilding & Dry Dock Co. ("NNSB"), n/k/a Huntington Ingalls

Incorporated appeals the June 17, 2016 decision of the Virginia Workers' Compensation

Commission (the "Commission") awarding Wardell Orthopaedics, P.C. ("Wardell") an

additional fee of $10,951.04 for services rendered to Charles Bell ("Bell") in connection with

Bell's August 26, 1995 industrial accident. On appeal, NNSB contends that the Commission

erred in (1) "failing to give legal effect to the employer's panel physician form, instead, requiring

the Employer to prove an affirmative waiver defense before relying on its panel offer,"

(2) allowing Wardell to challenge the validity of NNSB's panel physician form, (3) finding

Dr. Arthur Wardell ("Dr. Wardell") an authorized treating physician pursuant to the Virginia

Workers' Compensation Act (the "Act"), (4) failing to recognize an accord and satisfaction

between Wardell and NNSB, and (5) permitting Wardell to retroactively seek additional

reimbursement pursuant to the Act when reimbursement had been paid fully pursuant to the

federal Longshore and Harbor Workers' Compensation Act (the "Longshore Act"), 33 U.S.C. §§ 901-950 (2016).

## I. Background

The claimant, Bell, incurred a compensable left knee injury from a forklift accident on August 26, 1995 while working for NNSB. NNSB accepted the injury as compensable under both the Act and the Longshore Act. The 1995 physician panel offer letter, prepared by NNSB, indicated in part:

> I understand that under the Virginia Workers' Compensation Act, I must accept treatment from one of a panel of three doctors chosen by my Employer. If I fail to do so, I will lose all my rights under the [] Act. I understand that under the [Longshore Act], I can initially select my own doctor. In either case, I cannot change doctors without my Employer's or the Deputy Commissioner's written permission.

On August 28, 1995, Bell chose Dr. Kerry F. Nevins ("Dr. Nevins") from the panel of three physicians chosen by NNSB. On July 8, 1996, the Commission awarded Bell "the payment of all reasonable and necessary medical treatment causally related to the August 26, 1995 accident for as long as necessary."

After Dr. Nevins retired, Bell had to select a new treating physician. In pertinent part, Bell and C.M. Lassiter ("Lassiter"), a NNSB representative, signed the following "Choice of Physician Authorization" form as provided by NNSB:

> I, Charles B. Bell, understand that, under the Virginia Workers' Compensation Act, I must select a physician from a panel of three physicians offered by Newport News Shipbuilding. If I decline to choose a panel physician, I understand that my rights under the Virginia Workers' Compensation Act are subject to challenge and may be lost.
>
> . . . .
>
> I, Charles B. Bell, understand that, if I decline to choose a panel physician, I may select any physician of my choice under the Longshore and Harbor Workers' Compensation Act, if applicable.

I also understand that, if I have selected a panel physician, that physician is the sole treating physician for my injury. I hereby select Dr. Arthur Wardell located in Suffolk, VA, to treat me for the injury I sustained while working for Newport News Shipbuilding. I understand that the physician listed above is my own free choice of physician and I may not change physicians and/or seek treatment from another physician without express permission from Newport News Shipbuilding. Newport News Shipbuilding will not be responsible for the charges of any other physician unless prior authorization is obtained from an authorized representative of Newport News Shipbuilding.

On September 8, 2010, Bell chose not to select a panel physician as chosen by NNSB, instead, Bell chose Dr. Wardell as his treating physician.

The Commission found that Dr. Wardell treated Bell for the effects of the August 26, 1995 accident from September 29, 2010 through June 4, 2013. NNSB paid Wardell for Bell's treatment pursuant to the Department of Labor (DOL) fee schedule in accordance with the Longshore Act. NNSB paid a total of $17,205.96.

On March 11, 2014, Elizabeth Lester ("Lester"), a Wardell administrator, requested a hearing before the Commission because, "[Wardell had] received partial payments from [NNSB for Bell]. We do not have a contract with [NNSB]. I am requesting these claims be placed on the docket to be heard for payment in full." Wardell claimed that it was due $28,157 for the medical treatment of Bell, but that NNSB had only paid $17,205.96. Wardell sought the difference of $10,951.04.

On April 29, 2015, Lester gave a deposition. Lester testified that she was aware individuals who work for NNSB are covered for workers' compensation under both the Act and the Longshore Act. The following colloquy occurred during Lester's deposition:

[NNSB Counsel:] And if the payments were being made pursuant to the Longshore fee schedule, would that cause the review to be complete or would there be further action?

- 3 -

[Lester:] They would have written off the account. They would have written off the balance due if it was according to the DOL fee schedule.

[NNSB Counsel:] And when you say "written off the balance due," what does that mean?

[Lester:] If we charge 500, we receive 300 . . . , the difference would be written off.

Lester stated that after an audit and training on the Act, she advised Wardell that it did not have to accept only the DOL fee schedule payment.

[NNSB Counsel:] And so once it is, well, written off, does that signify that at that point Wardell Orthopaedics believed that it had been paid correctly and that there was nothing further that needed to be done?

[Lester:] We accepted that payment. But later we're educated [sic], we were educated with the Virginia Workers' Comp. Commission that we did not have to accept that payment.

[NNSB Counsel:] All right. I just want to go back to the point where you received the payments and then Wardell Orthopaedics would look at it and determine whether they believed they were paid correctly at the time based on the Federal fee schedule.

[Lester:] I did answer that. It is, yes.

[NNSB Counsel:] Okay. And at that point if whoever was reviewing the bill believed that it had been paid correctly based on the Federal fee schedule, then that's when they would do the write-off?

[Lester:] Yes.

The parties proffered testimony from Donna Marshall ("Marshall"), an employee with NNSB's third party repricing contractor Sedgwick, that Wardell had never contacted Sedgwick between 2010 and 2013 to advise its bills were incorrectly paid. However, on April 29, 2015, Suzanne Raynor ("Raynor"), a Wardell billing office supervisor, testified that she saw that NNSB had approved Bell's visit with Dr. Wardell.

- 4 -

Lassiter's proffered testimony described how he gave a PowerPoint presentation to Bell outlining the rights and obligations of the NNSB and Bell under both the Act and the Longshore Act. Lassiter verbally explained "to the injured employee that he had a free choice of authorized treating physician under the terms of the [Longshore Act], but that under [the Act], the employer is entitled to provide a panel of three physicians that the employee may choose from." Finally, Amy Henley ("Henley"), Manager of NNSB's Workers' Compensation Department, would have testified that Wardell and Dr. Wardell have never been panel physicians pursuant to the Act. Additionally, Henley would have testified that because Wardell had never been an authorized treating physician all payments were made pursuant to the Longshore Act.

On November 16, 2015, a hearing was held before Deputy Commissioner Lee Wilder ("Deputy Commissioner Wilder") in Virginia Beach, Virginia. NNSB argued that Wardell's treatment was not authorized pursuant to the provisions of the Act and that Wardell's application to the Commission was barred by the doctrines of laches, waiver, and accord and satisfaction. On December 7, 2015, Deputy Commissioner Wilder found in favor of Wardell. On June 17, 2016, the Commission agreed with the deputy commissioner's December 7, 2015 decision and awarded Wardell an additional fee of $10,951.04 for services rendered to Bell in connection with his August 26, 1995 industrial accident.

The Commission found that the language used on NNSB's "Choice of Physician Authorization" form, "If I decline to choose a panel physician, I understand that my rights under the Virginia Workers' Compensation Act are subject to challenge and may be lost . . . ," "failed to inform [Bell], [of] his rights under the Act [and they] were not properly waived. Therefore, Dr. Wardell became his authorized treating physician under both the Act as well as the Longshore Act. Claimant's medical providers were entitled to payment under the Act." Next, the Commission found the doctrine of laches inapplicable as applied to the facts of this case

- 5 -

because the claim was filed within a reasonable time and NNSB "failed to prove any neglect by the medical provider to pursue this claim prejudiced [NNSB] in any way." Then, the Commission found that NNSB, as the debtor, did not meet their burden to prove accord and satisfaction because even if the balance of the bills was written off in Wardell's internal records, no evidence existed that that was communicated to NNSB. Therefore, it found that accepting payment under the DOL fee schedule did not indicate a knowing waiver of Wardell's right to receive payment of the prevailing community rate pursuant to Code § 65.2-605 for medical treatment of the claimant, Bell.

## II. Analysis

### A. Standard of Review

Under settled principles of appellate review, we consider the evidence in the light most favorable to the prevailing party before the Commission. Layne v. Crist Elec. Contr., Inc., 64 Va. App. 342, 345, 768 S.E.2d 261, 262 (2015). "An award by the Commission is conclusive and binding as to all questions of fact." Ford Motor Co. v. Favinger, 275 Va. 83, 88, 654 S.E.2d 575, 578 (2008); see also Code § 65.2-706(A). However, this Court is only bound by the "Commission's findings of fact as long as there was credible evidence presented such that a reasonable mind could conclude that the fact in issue was proved, even if there is evidence in the record that would support a contrary finding." Anderson v. Anderson, 65 Va. App. 354, 361, 778 S.E.2d 132, 136 (2015). Yet, "[s]uch deference to the Commission does not extend to questions of law, which we review de novo." Id. (citing Rusty's Welding Service, Inc. v. Gibson, 29 Va. App. 119, 127, 510 S.E.2d 255, 259 (1999) (en banc)).

### B. Standing to Challenge Validity of Employer's Panel Physician Form

NNSB argues that the Commission erred by permitting Wardell to challenge NNSB's physician panel form before the Commission because Wardell never attacked the panel form

before the deputy commissioner, never asserted its status as a third-party beneficiary, and never presented evidence invalidating the panel agreement between NNSB and Wardell. Wardell did not challenge the employer's panel form, rather it was done *sua sponte* by the Commission, and this was error, according to NNSB, because the third-party beneficiary must assert its status.

However, NNSB never raised this issue before the Commission. As such, Rule 5A:18 bars our consideration of that issue for the first time on appeal.[1] See Rule 5A:18; Williams v. Gloucester Sheriff's Dep't, 266 Va. 409, 411, 587 S.E.2d 546, 548 (2003). Furthermore, NNSB does not argue that we should invoke the "good cause" or "ends of justice" exceptions to Rule 5A:18, and we decline to do so *sua sponte*. Hampton Inn & Selective Ins. Co. of Am. v. King, 58 Va. App. 286, 301, 708 S.E.2d 450, 457 (2011) (citing Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*)).

## C. Affirmative Waiver Defense

NNSB argues that Bell waived his right to treatment under the Act by choosing a physician, Dr. Wardell that was not included in NNSB's physician panel.[2] Pursuant to Code § 65.2-603, "the employer shall furnish or cause to be furnished, free of charge to the injured employee, a physician chosen by the injured employee from a panel of at least three physicians selected by the employer and such other necessary medical attention." NNSB argues that when an employer presents its injured employee with a valid panel offer, the employer can only be

---

[1] Rule 5A:18 states:

> No ruling of the trial court or the Virginia Workers' Compensation Commission will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to preserve the issue for appellate review.

[2] We note that NNSB accepted Bell's August 26, 1995 accident as compensable under both the Act and the Longshore Act.

held liable for a claimant's treatment if that claimant used an authorized panel physician, absent an order from the Commission or other exception circumstances. In support of this argument NNSB cites to Code § 65.2-603(B) which states:

> The unjustified refusal of the employee to accept such medical service or vocational rehabilitation services when provided by the employer shall bar the employee from further compensation until such refusal ceases and no compensation shall at any time be paid for the period of suspension unless, in the opinion of the Commission, the circumstances justified the refusal. In any such case the Commission may order a change in the medical or hospital service or vocational rehabilitation services.

The Commission never made a finding that Bell unjustifiably refused the medical services offered by NNSB. Rather, the Commission found that NNSB's language, "*If I decline to choose a panel physician, I understand that my rights under the Virginia Workers' Compensation Act are subject to challenge and may be lost . . .* ," in its "Choice of Physician Authorization" form failed to properly inform Bell of his rights under the Act. The Commission decided that because Bell was not properly informed he did not waive his rights and Dr. Wardell became his authorized treating physician under the Act as well as the Longshore Act. It then found Bell's medical provider, Wardell, entitled to payment under the Act.

"Two elements are necessary to establish waiver: Knowledge of the facts basic to the exercise of the right and the intent to relinquish the right." Stockbridge v. Gemini Air Cargo, Inc., 269 Va. 609, 621, 611 S.E.2d 600, 606 (2005). Additionally, the party seeking to rely upon waiver must prove those two essential elements to the trier of fact "by clear, precise, and unequivocal evidence." Stanley's Cafeteria, Inc. v. Abramson, 226 Va. 68, 74, 306 S.E.2d 870, 873 (1983) (quoting Utica Mutual v. National Indemnity, 201 Va. 769, 773, 173 S.E.2d 855, 858 (1970)).

NNSB argues that the Commission misapplied the waiver doctrine because Wardell never presented evidence that Bell misunderstood the terms of his panel form nor was it alleged

that NNSB provided Bell an invalid panel. Rather, according to NNSB, Wardell understood his rights and chose to exercise his right to treatment pursuant to the Longshore Act to the prejudice of his rights under the Act. According to NNSB, the Commission erred by solely relying on the signed panel offer form and ignoring Lassiter's testimony that he gave Bell a PowerPoint presentation and orally discussed his rights pursuant to both the Longshore Act and the Act when it decided that NNSB failed to inform Bell of his rights under the Act. NNSB claims the result of this "judge made law" will now be that "panel forms cannot use broad language intended to warn a worker, but must instead describe a legalistic set of conditions upon which rights to authorized medical care may exist under the Act—a condition proscribed nowhere in [Code §] 65.2-603(A)(1)."

We reject NNSB's argument. This Court is bound by a Commission's findings of fact as long as there was credible evidence presented such that a reasonable mind could conclude that the fact in issue was proved, even if there is evidence in the record that would support a contrary finding. NNSB failed to meet its burden of establishing Bell waived his right to treatment. The Commission rejected Lassiter's proffered testimony. The Commission did not err in focusing on the signed written agreement between Lassiter and Bell that included ambiguous language.

## D. Authorized Treating Physician: Dr. Wardell

NNSB argues that, pursuant to Code § 65.2-603, when an employer offers the employee a valid panel of three physicians, an employer can only be liable for medical treatment if (1) an employee treats with a panel physician, (2) an employee seeks emergency medical treatment causally related to the accident, (3) an employer provides inadequate medical treatment and the employee seeks non-authorized medically necessary and reasonable treatment, or (4) an authorized provider refers the claimant to another physician for necessary medical treatment. Thus, according to NNSB, because Bell refused its panel of three physicians and it never

authorized Dr. Wardell as a treating physician, it cannot be held liable for Bell's treatment,

excluding the above four exceptional circumstances, under the Act. However, NNSB fails to

provide any legal support for its proposition that Bell's rejection of a valid panel offer results in a

complete bar for any recovery under the Act.

"The expense of medical service, if unauthorized, may not be compensable. But the use

of unauthorized medical service is not necessarily a refusal of medical service." Southland Corp.

v. Welch, 33 Va. App. 633, 639, 536 S.E.2d 443, 446 (2000). As we have stated before, "the

matter of justification must be considered from the viewpoint of the [employee] and in light of

the information which was available to [him]." Id. at 639-40, 536 S.E.2d at 446-47. At the time

of Bell's physician selection, he was told that his "*rights under the Virginia Workers'*

*Compensation Act are subject to challenge and may be lost*." To agree with NNSB, this Court

would effectively allow an employer to mislead an employee with vague generalities about his

benefits. We cannot agree with NNSB, and conclude that from the viewpoint of Bell and in light

of the information that was available to him at the time, he did not refuse care and the penalty

associated with Code § 65.2-603(B) shall not apply.[3]

Additionally, we note that this Court, in Ceres Marine Terminals v. Armstrong, 59

Va. App. 694, 722 S.E.2d 301 (2012), has previously allowed a claimant to receive payment

pursuant to the Act for the difference of the prevailing rate in the community and the amount

paid by the employer in accordance with the DOL Longshore fee schedule. In that case, we held

that

> [w]hen we consider the text of the Act along with its well-known
> humanitarian purpose, we conclude that it was reasonable for the
> commission to consider the medical bill as *prima facie* evidence
> that the charges were consistent with the requirements of the Act

---

[3] "The unjustified refusal of the employee to accept such medical service or vocational rehabilitation services when provided by the employer shall bar the employee from further compensation until such refusal ceases." Code § 65.2-603(B).

- 10 -

and to place the burden of proving that the medical fee was excessive on the employer.

Id. at 703, 722 S.E.2d at 306. Here, it was never challenged that the fee sought by Wardell was the prevailing rate in the community. Therefore, we affirm the Commission's decision to allow recovery for the difference of the prevailing rate in the community and the amount paid pursuant to the federal DOL fee schedule.

### E. Accord and Satisfaction

NNSB alternatively argues that Wardell's acceptance of payments under the DOL fee schedule and corresponding write-off amounted to an accord and satisfaction of the claim against NNSB. According to NNSB, the following colloquy during Lester's deposition is direct evidence of an accord and satisfaction:

> [NNSB Counsel:] And so once it is, well, written off, does that signify that at that point Wardell Orthopaedics believed that it had been paid correctly and that there was nothing further that needed to be done?
>
> [Lester:] We accepted that payment. But later we're educated [sic], we were educated with the Virginia Workers' Comp. Commission that we did not have to accept that payment.
>
> [NNSB Counsel:] All right. I just want to go back to the point where you received the payments and then Wardell Orthopaedics would look at it and determine whether they believed they were paid correctly at the time based on the Federal fee schedule.
>
> [Lester:] I did answer that. It is, yes.
>
> [NNSB Counsel:] Okay. And at that point if whoever was reviewing the bill believed that it had been paid correctly based on the Federal fee schedule, then that's when they would do the write-off?
>
> [Lester:] Yes.

Additionally, NNSB argues that a course of dealing between it and Wardell for three years established circumstantial evidence of an accord and satisfaction.

"Under the common law, an accord and satisfaction requires both that the debtor intend that the proffered amount be given in full satisfaction of the disputed claim and that the claimant accept that amount in accordance with the debtor's intent. The acceptance need not be express, but may be implied." Gelles & Sons Gen. Contr. v. Jeffrey Stack, 264 Va. 285, 289, 569 S.E.2d 406, 408 (2002). It is the debtor's burden to prove accord and satisfaction.

Here, the evidence is not sufficient to prove that Wardell either expressly or implicitly accepted the DOL fee schedule payments as a full satisfaction of the charge. While Wardell may have written off the payments, it never made its internal accounts known to NNSB. Therefore, mere acceptance of the payments did not constitute an accord and satisfaction and Wardell may claim the difference of the DOL Longshore fee payment and the prevailing rate in the community for the medical procedure. See Ceres Marine Terminals, 59 Va. App. at 703, 722 S.E.2d at 306.

F. Retroactive Reimbursement

Finally, NNSB argues that it presented clear and convincing evidence of an implied waiver by Wardell which estops Wardell from recovering written-off account balances in this case. NNSB cites Stockbridge, 269 Va. at 620-21, 611 S.E.2d at 606, for the proposition that the Virginia Supreme Court deemed a corporation to have knowledge of its affairs upon receipt of a stockholder's put notice, and based on that case this Court must conclude that because Wardell had actual notice of the Longshore Act payments, delaying three years to bring this claim bars recovery.

First, in Stockbridge our Supreme Court was construing the law of Delaware as it applied to a Delaware Corporation doing business in Virginia. Thus, NNSB's citation is not an accurate statement of Virginia law. Second, NNSB makes what is essentially a laches argument.

This Court has defined the equitable doctrine of laches as:

> '"the neglect or failure to assert a known right or claim for an unexplained period of time under circumstances prejudicial to the adverse party."' Bazzle v. Bazzle, 37 Va. App. 737, 747, 561 S.E.2d 50, 55 (2002) (quoting Princess Anne Hills v. Susan Constant Real Est., 243 Va. 53, 58, 413 S.E.2d 599, 602 (1992)). The doctrine has no fixed guidelines – "'no rigid rule can be laid down as to what delay will constitute laches; every suit must depend upon its own circumstances.'" Stewart v. Lady, 251 Va. 106, 114, 465 S.E.2d 782, 786 (1996) (quoting Puckett v. Jessee, 195 Va. 919, 930, 81 S.E.2d 425, 431 (1954)). The litigant raising laches as a defense bears the burden of demonstrating both the requisite delay and prejudice. Barr v. S.W. Rodgers Co., 34 Va. App. 50, 58, 537 S.E.2d 620, 624 (2000).

Berglund Chevrolet, Inc. v. Landrum, 43 Va. App. 742, 755, 601 S.E.2d 693, 699 (2004). We hold that there was no neglect or delay by Wardell for an unexplained period that was prejudicial to NNSB. The Commission was correct in deciding that the doctrine of laches should not bar Wardell's claim because as soon as Wardell became aware of the underpayment in 2013 the claim was filed in early 2014. Furthermore, NNSB did not present evidence that it was prejudiced in any way by Wardell's delay in claiming payment.

For all of these reasons, we affirm the judgment of the Commission awarding Wardell an additional fee of $10,951.04 for services rendered to Bell in connection with Bell's August 26, 1995 industrial accident.

Affirmed.