COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Malveaux and Senior Judge Annunziata
Argued at Norfolk, Virginia

KAMCO BUILDING SUPPLY CORPORATION AND
 PA LUMBERMEN'S MUTUAL INSURANCE COMPANY
                                        MEMORANDUM OPINION* BY
v.      Record No. 0592-18-1              JUDGE ROBERT J. HUMPHREYS
                                        SEPTEMBER 25, 2018
ERIC HEARD


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Ciara Wren Malone (Franklin & Prokopik, PC, on briefs), for
          appellants.

          (Sidney H. Kelsey, Jr., on brief), for appellee.  Appellee submitting
          on brief.


       Appellant Kamco Building Supply Corporation and its insurer, Pennsylvania

Lumbermen's Mutual Insurance Company (collectively, "employer"), appeal the March 23, 2018

decision of the Workers' Compensation Commission (the "Commission") affirming the deputy

commissioner's determination that Eric Heard ("Heard") was entitled to permanent total

disability benefits.  On appeal, employer alleges the following:

          1.  The Virginia Workers' Compensation Commission erred, as a
              matter of law, in finding that the claimant proved permanent
              and total disability due to inability to use his legs to any
              substantial degree in any gainful activity.

          2.  The Virginia Workers' Compensation Commission erred, as a
              matter of law, in finding that the claimant proved permanent
              and total disability pursuant to Virginia Code § 65.2-500(D)
              and Virginia Code § 65.2-503(C)(1).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

3. The Virginia Workers' Compensation Commission's application of the statutory and case law was incorrect.

4. The Virginia Workers' Compensation Commission's factual findings are not supported by credible evidence.

## I. BACKGROUND

On October 17, 2005, Heard suffered a compensable workplace injury. Specifically, Heard suffered a compensable workplace injury to his left ankle and foot while working as a commercial truck driver. Heard developed deep vein thrombosis ("DVT") in his left leg as a result of the injury. On December 13, 2005, the Commission entered an award order for medical benefits and temporary total disability benefits beginning on October 26, 2005, and continuing. By September 2006, Heard developed DVT in his right leg. On November 23, 2009, a deputy commissioner rendered an opinion holding that the DVT in Heard's left and right legs was a compensable consequence of the workplace injury.

On September 22, 2015, Heard filed a request for hearing seeking permanent total disability benefits after receiving the maximum 500 weeks of indemnity benefits allowed under Code § 65.2-518, the Virginia Workers' Compensation Act (the "Act"). Heard asserted that he had reached the maximum medical improvement for both of his lower extremities and had a seventy-five percent rating to the left lower extremity and twenty-five percent to the lower right extremity. In support of his claim, Heard attached responses to a medical questionnaire from his primary treating physician, Dr. Christopher Paschold ("Dr. Paschold").[1] Heard's attorney prepared the medical questionnaire, which required Dr. Paschold to fill in some blanks and check boxes labeled "Agree" or "Disagree." In the questionnaire, Dr. Paschold indicated that Heard suffered a seventy-five percent permanent impairment in his left leg and a twenty-five percent permanent impairment in his right leg as a result of Heard's October 17, 2005 accident. Also, in

---

[1] Dr. Paschold is a hematologist and oncologist who has treated Heard since 2005.

the section of the questionnaire addressing the combined effect of Heard's injuries, Dr. Paschold checked "Agree" to the following statement:

> It is my opinion with reasonable medical certainty, that the combined effect of the permanent disability injuries to his lower extremities render him unable to use his extremities in any substantial degree in any gainful employment and due to the fact that Mr. Heard is unable to use his lower extremities to any substantial degree in any gainful employment, it is my opinion that he is permanently unemployable.

Dr. Paschold signed and dated the questionnaire on September 18, 2015.

Employer contested Heard's claim, arguing that the statute of limitations in Code § 65.2-601 barred Heard's claim as it was based on bilateral lower extremity injuries as a result of the workplace accident on October 17, 2005. Employer also contended that Heard was not permanently and totally disabled as contemplated by Code § 65.2-503(C) and that Heard could use his legs in gainful employment.

On February 6, 2017 and June 2, 2017, a hearing was held before a deputy commissioner. There, Heard testified that he worked as a commercial truck driver and restaurant waiter at the time of his injury. Heard described how he used his legs to a substantial degree while working both jobs. Heard then testified regarding his current physical limitations as a result of his injury. Heard agreed that while his legs "swell every day[,]" he is currently "okay as far as walking and taking a smoke break, or going to the store, or [sic] any short period of time." Heard also noted that he frequently drives his wife because she has "panic attacks." When asked about using his legs "in a substantial degree,"[2] Heard testified that after an hour his lower legs start "to get numb, because of the lack of circulation . . . so I have to stand up and kind of get everything moving around[.]"

---

[2] Heard defined "substantial degree" as using his legs for "probably . . . an hour."

At one point during his testimony, Heard summarized his actual functional limitations following the injury and described the difficulties that he encountered in performing a "Functional Capacity Evaluation" with Dr. Maurice Schwartz, a hematologist. This included using his legs to climb and descend steps, kneel, squat, and crouch, all of which created swelling and "extreme pain" in his lower extremities and feet. Finally, on direct examination, Heard testified that Dr. Paschold changed his impairment classification from moderate to severe because he started experiencing more numbness in both legs and because his right lower leg "started turning blue."

Following the first hearing, Dr. Paschold's *de bene esse* deposition from February 1, 2017, was entered into evidence.[3] There, Dr. Paschold noted his belief that Heard was incapable of using his legs in employment since writing a "To Whom It May Concern" letter dated October 26, 2006, which stated that Heard "is currently totally disabled and unable to work secondary to severe postphlebitic syndrome and pain for his recurrent DVT."[4] Further, Dr. Paschold indicated that he has not changed his opinion that Heard has remained incapable of performing any form of employment since completing an "Estimated Physical Capabilities Form" on September 21, 2007.

---

[3] Dr. Paschold also participated in a discovery deposition on September 14, 2016. The transcript was entered into evidence and considered by the Commission in determining whether Heard met his evidentiary burden. During this deposition, Dr. Paschold explained that it was his opinion, "with reasonable medical certainty, that the combined effect of [Heard's] permanent disability injuries to the lower extremities render him unable to use his extremities in any substantial degree and any gainful employment" and that Heard "is permanently disabled." Although Dr. Paschold was unable to provide a specific definition of "gainful employment" at the time, he stated that Heard "can't work in any meaningful capacity."

[4] Post-phlebetic syndrome (PTS) also known as postphlebitic syndrome and venous stress disorder is a medical condition that may occur as a long-term complication of deep vein thrombosis (DVT). See Susan R. Kahn & Jeffrey S. Ginsberg, Relationship Between Deep Venous Thrombosis and the Post-thrombotic Syndrome, Arch Intern Med., 17-26 (2004).

During the second hearing on June 2, 2017, employer introduced surveillance videos of Heard's activities on multiple days in July 2016. The surveillance videos showed Heard at home, at a store, and driving a vehicle. When asked about the surveillance videos, Heard testified "I wasn't driving a truck and I wasn't waiting tables. What I was doing, I let my dog outside, I sat outside in my front yard, a friend of mine, I drove their car to the grocery store [sic], that's about all I saw in it." According to Heard, the surveillance videos did not show him using his legs in a "substantial degree" or performing any "gainful employment."

In an opinion dated October 10, 2017, the deputy commissioner found the claim timely and concluded that Heard proved that he was permanently and totally disabled as contemplated by Code § 65.2-503(C)(1). According to the deputy commissioner, Heard met his burden of proof "through his credible testimony regarding his symptoms and limitations and the opinions of Dr. Christopher Paschold, the hematologist and oncologist who provided treatment to him beginning in 2005." In doing so, the deputy commissioner explicitly addressed each of employer's concerns regarding the reliability and sufficiency of Dr. Paschold's medical opinions, finding them without merit. The deputy commissioner also found that employer's surveillance videos of Heard's activities were "considered but not found to undermine Heard's testimony about his physical abilities" and that "[n]othing in the surveillance is found to undermine Dr. Paschold's opinions." As noted by the deputy commissioner, "Code § 65.2-503(C)(1) does not require that a claimant be bedridden or unable to perform any physical activities in order to qualify for compensation for permanent total disability."

Based on all of the evidence presented, the deputy commissioner concluded that "Heard proved that he is entitled to compensation for permanent total disability under [Code] § 65.2-503(C)(1)." Thereafter, the deputy commissioner awarded Heard compensation in the amount of $608.79 per week beginning August 1, 2015 and continuing, medical benefits

pursuant to Code § 65.2-603, and attorney's fees. Employer subsequently requested a review by the full Commission of the award of permanent total disability benefits.

In an opinion dated March 23, 2018, the Commission affirmed the decision of the deputy commissioner. The Commission indicated that after reviewing the entire record, "including the previous Opinions and awards, depositions, hearing testimony, the surveillance video, the designated medical records, the position statements, the parties' Written Statements, and the October 10, 2017 Opinion," Heard "proved permanent and total disability pursuant to . . . Code § 65.2-500(D) and . . . Code § 65.2-503(C)(1)." The Commission noted that the surveillance videos did not prove that Heard could use his lower extremities in any gainful employment. And, similar to the deputy commissioner, the Commission found that "Dr. Paschold's opinion as the treating physician is entitled to great weight" and that he "issued reasonable opinions regarding maximum medical improvement and permanent impairment." The Commission noted that Dr. Paschold "was certain the deep vein thromboses, thrombophlebitis, and postphlebitic syndrome resulted from [Heard's] work-related injury."

Based on the record before it, the Commission found no error in the deputy commissioner's determination. Employer now appeals that decision.

## II. ANALYSIS

### A. Standard of Review

On appeal from the Commission, "this Court reviews the evidence in the light most favorable to the prevailing party[.]" Van Buren v. Augusta Cty., 66 Va. App. 441, 444, 787 S.E.2d 532, 533 (2016) (quoting Town & Country Hosp., LP v. Davis, 64 Va. App. 658, 660, 770 S.E.2d 790, 791 (2015)). "[T]his Court is only bound by the 'Commission's findings of fact as long as there was credible evidence presented such that a reasonable mind could conclude that the fact in issue was proved, even if there is evidence in the record that would support a contrary

- 6 -

finding.'"  Newport News Shipbuilding & Dry Dock Co. v. Wardell Orthopaedics, P.C., 67

Va. App. 404, 412-13, 796 S.E.2d 461, 466 (2017) (quoting Anderson v. Anderson, 65 Va. App.

354, 361, 778 S.E.2d 132, 136 (2015)).  "In determining whether credible evidence exists to

support the commission's findings of fact, 'the appellate court does not retry the facts, reweigh

. . . the evidence, or make its own determination of the credibility of the witnesses.'"  Tex Tech

Indus. v. Ellis, 44 Va. App. 497, 504, 605 S.E.2d 759, 762 (2004) (quoting Wagner Enters. v.

Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

## B.  Sufficiency of the Evidence

All of employer's assignments of error can be summarized as follows:  that Heard did not

present credible evidence from which the Commission could conclude that he is entitled to

permanent and total disability benefits pursuant to Code §§ 65.2-500(D) and 65.2-503(C)(1).

Employer has attempted to reframe what is fundamentally a single insufficiency of the evidence

argument into four redundant assignments of error in an effort to persuade this Court to instead

conduct a *de novo* review of the evidence.  We decline to do so.

Code § 65.2-503(C)(1) provides compensation for "permanent and total incapacity" for

"loss of . . . both legs."  In construing this section, however, "the permanent loss of the *use* of a

member shall be equivalent to the loss of such member, and for the permanent partial loss or *loss

of use* of a member, compensation may be proportionately awarded."  Code § 65.2-503(D)

(emphasis added).  "'Total and permanent loss' or 'loss of use' do not mean that the leg is

immovable or that it cannot be used in walking around the house, or even around the block."

Pantry Pride v. Backus, 18 Va. App. 176, 179, 442 S.E.2d 699, 701 (1994) (quoting Virginia

Oak Flooring Co. v. Chrisley, 195 Va. 850, 857, 80 S.E.2d 537, 541 (1954)).  Rather, the terms

"mean that the injured employee is unable to use it in any substantial degree in any gainful

employment."  Chrisley, 195 Va. at 857, 80 S.E.2d at 541.

To meet his burden of proof under this section, Heard was required to prove by a preponderance of the evidence that he is unable to use his permanently impaired legs in gainful employment. See id. In addition, Heard was required to "establish that he has achieved maximum medical improvement and . . . his functional loss of capacity [must] be quantified or rated." Cafaro Constr. Co. v. Strother, 15 Va. App. 656, 661, 426 S.E.2d 489, 492 (1993) (referencing Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 401 S.E.2d 213 (1991)). These are fundamentally factual determinations within the purview and expertise of the Commission. Therefore, unless we can say as a matter of law that Heard's evidence failed to sustain his burden of proof, the Commission's findings are binding and conclusive upon us. See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

Employer argues that Heard's evidence was insufficient as a matter of law to prove permanent total disability because Heard "cannot show that he is unable to use his legs to a substantial degree in any gainful employment." According to employer, the Commission only relied upon Heard's testimony and Dr. Paschold's opinion in finding that Heard sustained his burden in proving permanent total disability. Employer claims that "[n]either is sufficient to show [Heard] is incapable of using his legs to any substantial degree in gainful employment." Employer argues that, rather than addressing activities that he cannot complete, Heard's testimony "shows all of the activities he could do." Employer also questions Dr. Paschold's opinions because they allegedly only focused upon Heard's "inability to do his pre-injury position" and because Dr. Paschold "[did] not comment on if [Heard] could use his legs for any other type of employment."

Regarding employer's argument as to the conflicting medical opinions between various physicians and the weight that should not have been assigned to Dr. Paschold's opinions, such arguments are appropriate before the Commission, but not on appeal. Such an argument

concerns only the weight of the evidence assigned by the factfinder, not its probative or legal sufficiency. It is well-settled that "'[m]atters of weight and preponderance of the evidence, and the resolution of conflicting inferences fairly deducible from the evidence, are within the prerogative of the commission and are conclusive and binding' on this Court." Herbert Clements & Sons, Inc. v. Harris, 52 Va. App. 447, 458, 663 S.E.2d 564, 570 (2008) (quoting Kim v. Sportswear, 10 Va. App. 460, 465, 393 S.E.2d 418, 421 (1990)). As a result, the Commission was free to give great weight to Dr. Paschold's opinion that Heard is unable to use his lower extremities in any gainful employment and that Heard is permanently and totally disabled. Likewise, the Commission was free to discount or disregard any medical opinions to the contrary, which it clearly did. The same analysis applies to the Commission's role in assigning credibility to Heard's testimony and other evidence in the record.

After reviewing the record, we hold that evidence in the record before us supports the findings and decision of the Commission. Indeed, the evidence overwhelmingly supports the Commission's factual finding that Heard has a functional, permanent loss of use of both legs. Notably, the Commission explicitly stated that it had reviewed the entire record "including the previous Opinions and awards, depositions, hearing testimony, the surveillance video, the designated medical records, the position statements, the parties' Written Statements, and the October 10, 2017 Opinion" before finding that Heard proved his permanent and total disability. It is clear that the Commission relied upon significantly more evidence in the record than employer claims. Moreover, the Commission analyzed the significance of Dr. Paschold's testimony and opinions in detail and assigned them great weight. Although employer points to contrary evidence in the record, we are bound to disregard such evidence on appeal as it was implicitly rejected by the Commission as the factfinder. See Pro-Football Inc. v. Paul, 39 Va. App. 1, 11, 569 S.E.2d 66, 71-72 (2002).

- 9 -

## III.  CONCLUSION

For the foregoing reasons, we hold that the record supports the Commission's judgment that Heard is permanently and totally disabled as contemplated by Code § 65.2-503(C). Therefore, the Commission's judgment is affirmed.

Affirmed.