COURT OF APPEALS OF VIRGINIA

Present:   Judges Causey, Raphael and Senior Judge Clements
Argued at Richmond, Virginia

UNPUBLISHED

MONIQUE A. MILES

v.         Record No. 0873-24-2

CHARLES "CHUCK" SLEMP III, ET AL.

MEMORANDUM OPINION[*] BY
JUDGE DORIS HENDERSON CAUSEY
MARCH 3, 2026

FROM THE CIRCUIT COURT FOR THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

Monique A. Miles (Steven A. Krieger; Steven Krieger Law PLLC,
on briefs), *pro se*.

Jack L. White (Richard J. Batzler; McGuireWoods LLP, on briefs),
for appellees.


In August 2022, Monique Miles brought a claim for defamation against various officials

of Virginia's Office of the Attorney General (OAG) in both their individual and official

capacities; specifically, Charles "Chuck" Slemp III, the Chief Deputy Attorney General; Darrell

Jordan, the Chief of Staff; Klarke Kilgore, the Director of External Affairs; and Victoria LaCivita,

the Director of Communications (collectively, the defendants).[1]  After initially sustaining a

demurrer to part of Miles's complaint, the circuit court granted a plea in bar against Miles's

remaining claims in November 2023.  Miles's motion to reconsider was denied in April 2024.

On appeal, Miles asserts that the circuit court erred by declining to reinstate certain claims and in

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Miles originally also sued Jason Miyares, who was the Attorney General of Virginia.
The claims against Miyares were dismissed at the demurrer stage on sovereign immunity
grounds.

failing to impanel a jury on her plea in bar. For the reasons discussed below, we disagree with Miles's arguments and affirm the circuit court's rulings.

## BACKGROUND

Because the circuit court decided the case on the basis of the pleadings prior to taking any evidence, we "recite properly pled facts as alleged in the . . . complaint." *Steward v. Holland Fam. Props., LLC*, 284 Va. 282, 285 (2012) (citing *Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 102 (2001)).[2]

*Miles's OAG Application and Termination*

According to the complaint, Miles applied for the position of Deputy Attorney General with Virginia's Office of the Attorney General (OAG) in December 2021, and "provided all information that was requested of her" during the application process, over multiple rounds of interviews. Miles alleges that she was never asked any questions about the 2020 U.S. presidential election, the events of January 6, 2021, or her prior social media posts. Miles was offered the position and began her term as Deputy Attorney General on January 18, 2022.

Miles alleges that on February 10, 2022, Miles was contacted by a Washington Post reporter who planned to publish a story concerning certain social media posts that Miles made between the 2020 U.S. presidential election and the 2021 presidential inauguration. In the posts, Miles says, she "speculated" about lawsuits filed in relation to the election and referred to skeptics of that election as "patriots." Relatedly, Miles was present at the Ellipse, a park near the White House, on January 6, 2021. Miles alleges she attended a nonviolent demonstration there.

Miles alleges that at the time of her hiring, she believed that the OAG was aware of her political views due to her prior acquaintance with the OAG's Chief of Staff, Darrell Jordan.

_____

[2] As discussed in section II, *infra*, the complaint in this case was dismissed following a plea in bar that operated like a demurrer in that it assumed, for its purposes, the truth of the complaint's allegations.

Miles recalls originally deciding to apply for the position after Jordan encouraged her to do so. By the time of her hiring, Miles and Jordan had been "friends" on Facebook for four years, and they had interacted on that platform. Due to this Facebook friendship and those online interactions, Miles says she believed that the OAG "was fully aware of her political views, to include her statements concerning the 2020 election and the subsequent January 6th peaceful rally on the Ellipse, which she attended and the separate protests at the Capitol, which she did not attend."

Miles alleges that she informed Slemp, the Chief Deputy Attorney General, about the planned story on the same day that she was contacted by the Washington Post reporter. Later that same day, Slemp and Jordan informed Miles that she would be terminated from her position. According to Miles, they also offered her the opportunity to resign, which Miles declined. Nevertheless, the OAG released a statement stating that Miles had resigned.

Miles alleges that after the initial OAG press release, she was contacted by several media outlets. Miles recounts informing at least one media outlet that she had not resigned. The OAG then released a new statement. In the new statement, the OAG stated that it was the OAG's "understanding" that Miles had resigned earlier that day, but that "nevertheless," the OAG had "parted ways" with Miles because of Miles's "lack of transparency during her initial interviews for the position."[3] Later, Miles alleges, OAG officials "repeated this statement to members of

---

[3] The full statement, as reproduced in a news article and incorporated into the record by order of the circuit court in January 2023, reads as follows:

> "Earlier today, Ms. Miles surrendered her state government ID and equipment before leaving the premises after a conversation with our Chief Deputy Attorney General," the emailed statement said. "It is our understanding that she resigned at that time."
>
> "Nevertheless, the Office of Attorney General has parted ways with Ms. Miles for lack of transparency during her initial

the public and members of the [Virginia Governor] Youngkin administration." Miles recounts subsequently contacting the defendants, "notifying them that the OAG's statement that was published was defamatory and needed to be retracted." In response, Miles alleges, Jordan responded with a text message indicating that OAG officials were upset about Miles's comments to the media outlet Newsmax and "accus[ing] [Miles] of making threats by speaking with reporters."

*Miles's Defamation Suit*

Miles filed a complaint for defamation in August 2022. Miles's complaint was brought against the five OAG officials—Miyares, Slemp, Jordan, Kilgore, and LaCivita—both individually and in their official capacities.

The complaint alleges that the named defendants "collud[ed]" to publish defamatory statements while they were "acting as employees and/or agents of Defendant Miyares as the Attorney General" and that the statements "were published while in the scope of their respective employment and/or agency and while furthering the business interests of Defendant Miyares as the Attorney General."

Miles's complaint largely concerns the OAG's statement that the OAG had "parted ways" with Miles due to her "lack of transparency during her initial interviews for the position," and the defendants' subsequent "repe[tition]" of this statement. Miles argues that this statement was false, that it was known to be false at the time of its publication,[4] and that the statement constituted defamation per se because it imputed a lack of fitness to Miles in her profession as a licensed attorney by implying that she had been dishonest. Miles states that, due to this

---

interviews for the position. We appreciate her service and wish her well in the future."

[4] In the alternative, Miles alleges that the OAG and its officials acted with reckless disregard as to its falsity or made the statement in bad faith.

misrepresentation and the resultant harm to her reputation, she lost legal clients and was subject to threats and hate speech.

The defendants demurred to Miles's complaint. Among other arguments, the demurrer argued that the complaint "fail[ed] to allege facts sufficient to support claims against the Defendants in their respective individual capacities."

A hearing was held on the defendants' demurrer. At the hearing, Miles's counsel stated as follows on the subject of the individual capacity claims:

> . . . I will start by conceding that we do agree to withdraw the claims against the named defendants in their individual capacities.
> And just to explain, we initially included the claims against the individuals in the event that they presented a defense that they were on some form of collective frolic, or otherwise argue that they weren't operating within the scope of their employment. Based on the defendants' demurrer, that doesn't appear to be the case, and so we're fine with withdrawing that.
> However, in the event that the defendants either file an answer in the future or submit discovery responses or the like, where they do claim those kind of defenses, we would like the opportunity to reinstate the individual claims. But at this stage, it doesn't appear to be necessary.

After the hearing, the court issued an order, stating, inter alia, "the Court acknowledges that, at the . . . hearing, the Plaintiff withdrew her claims against the Defendants in their individual capacities." The order also held that Miles had pleaded sufficient facts to support an actionable claim of defamation, in that Miles alleged an actionable defamatory statement with the required level of "defamatory sting" and with actual malice.[5] The demurrer dismissed Attorney General Miyares from the suit on the grounds of sovereign immunity.

---

[5] In an assignment of cross-error, the defendants' challenge this ruling by the circuit court. Because of our decision in this case, we need not reach or consider the defendants' cross-error. *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

Subsequently, the defendants filed a plea in bar arguing that Miles's remaining claims were barred by sovereign immunity. With Miles's individual capacity claims withdrawn, "the only remaining claim in Plaintiff's Complaint [was] defamation against the four remaining Defendants in their official capacities within the [OAG]." Therefore, the defendants argued that Miles's only remaining claim was functionally a suit against the state itself for defamation that its employees committed while within the scope of their employment.[6] This claim, they argued, was barred by sovereign immunity.

In a motion in opposition to the plea in bar, Miles requested reinstatement of her individual capacity claims. Miles argued that her withdrawal of individual capacity claims was conditioned on the defendants not asserting a specific argument, which they did in fact assert: that the defendants were entitled to the "sovereign immunity that they argue is accorded to state employees in the course and scope of their duties."

At a subsequent hearing on the plea in bar, the circuit court judge voiced disagreement with Miles's characterization of her withdrawal request. The potential triggering condition for reinstatement that the court recalled was the Commonwealth's arguing that their employees' alleged defamation "'was not within the scope of employment.' That's different from, 'it was within their scope of employment.'"

In November 2023, the court entered an order sustaining the defendants' plea in bar. Miles filed a motion for reconsideration, which the court denied, after a stay, in April 2024. This appeal followed.

---

[6] On appeal, Miles does not assign error to (a) the circuit court's grant of the defendants' plea in bar, nor (b) the issue of whether the official capacity claims should have been construed as claims asserted against the state itself. Therefore, we do not consider these substantive sovereign immunity issues. *See* Rule 5A:20(e).

ANALYSIS

I. *The Circuit Court Did Not Err in Declining to Reinstate the Individual Capacity Claims*

In her first assignment of error, Miles argues that the circuit court erred by not reinstating her individual capacity claims.[7] For three reasons discussed below, we disagree.

A. The triggering condition did not occur.

First, Miles claims that her agreement to withdraw the individual capacity claims was conditional on the defendants not making a specific argument that, she argues, was ultimately made, thus entitling her to reinstatement of those claims. This argument fails, first, because even if any such requested condition could have legal effect, the record is clear that the requested triggering condition did not occur: the defendants never made the argument that Miles referred to in her request to the court.

It is first necessary to clarify the substance of the relevant request by Miles's counsel, as we disagree with Miles's portrayal of it on appeal. On brief, Miles asserts that she agreed to withdraw the individual capacity claims "with the caveat that if the appellees elected to defend on the ground that they were not liable for conduct undertaken in their official capacities, Miles could revive her individual claims." However, the transcript makes plain that the triggering condition on which Miles's counsel reserved the right to "reinstate" her claims was distinct from that argument. Miles requested that she be afforded the ability to "reinstate" the individual capacity claims *if* the defendants eventually argued that they were acting *outside the scope of their employment* at the time they made the press release. This potential argument—that the

_____

[7] In Miles's assignment of error, she also states that the circuit court erred by "failing to rule upon Miles's request to reinstate the action against the remaining defendants in their individual capacities." However, her arguments concern the circuit court's adverse ruling on that request, rather than any purported failure to rule. Thus, we will consider only the argument concerning the court's denial. *See* Rule 5A:20(e) (requiring an opening brief to provide "argument (including principles of law and authorities) relating to each assignment of error").

- 7 -

defendants were acting on a "collective frolic"—is different from the argument described by Miles on brief: that they were entitled to sovereign immunity in their official capacity.

The defendants did in fact make this latter, sovereign immunity argument, in their plea in bar. But the defendants never argued that they were acting outside of the scope of their employment. In fact, in the plea in bar, the defendants attempted to confine Miles to her own initial allegation that they were operating *within* their scope of employment at the time that they made the press release. Thus, in their plea in bar, the defendants explicitly disclaimed the argument that Miles mentioned in her request to the court (that the defendants were operating outside the scope of their employment), while making an argument that Miles did not mention (that the defendants were entitled to sovereign immunity when sued in their official capacity).

In sum, the defendants never made the argument that Miles asked the court to consider as a triggering condition for her right to reinstate the claims. This much is made clear in the transcript from the circuit court. *See Huntt v. Commonwealth*, 212 Va. 737, 738 n.2 (1972) ("[W]e must rely on the transcript as certified to us by the [circuit] court."). Therefore, Miles has not shown error in the court's decision precluding her from reinstating her individual capacity claims.[8]

B. The approbate-reprobate doctrine barred Miles's argument.

"[A] party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory. Nor may a

---

[8] Miles also puts forth one additional argument for reinstatement of the claims: she states that, because the court found that she had adequately alleged actual malice to survive the demurrer phase, a reasonable factfinder could find that sovereign immunity was unavailable for the named officials, and, thus, her individual capacity claims should have been revived.

Without rendering any ruling on the merits of this legal theory, it suffices to state that pursuant to the transcript, Miles did not request a right to reinstate individual capacity claims conditioned on this basis. Her requests related to potential *defenses* raised by the defendants, not to any potential *rulings* by the circuit court.

- 8 -

party invite error and then attempt to take advantage of the situation created by his own wrong.'" *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009) (quoting *Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 181 (2006)).

Here, as discussed above, Miles's request for the circuit court to reinstate her individual capacity claims was inconsistent with her prior request to that same court, at an earlier stage of the same proceeding. After initially requesting that she be granted permission to withdraw the claims, while conditionally retaining the power to "reinstate" them if a particular event (the defendants' assertion that they were acting outside the scope of their employment) occurred, she later asserted the right to reinstate the claims due to the occurrence of a different event (the defendants' assertion that they were entitled to sovereign immunity in their official capacity). Thus, Miles's argument constituted an attempt to impermissibly approbate and reprobate, and the circuit court did not err in declining to permit her to do so. *See id.*

Of note, the mutually contradictory nature of Miles's requests to the court was not just a formal error. Miles's request for reinstatement, if heeded by the circuit court, would have permitted Miles to shield her individual capacity claims from the legal sufficiency arguments in defendants' prior demurrer and then resurrect them, post-demurrer. It was not error for Miles, instead, to be confined to what was "obviously the result of [her] own strategy and actions" in the course of the litigation of this case. *Commonwealth v. Holman*, 303 Va. 62, 72 (2024) (quoting *Rowe*, 277 Va. at 502 (discussing approbate-reprobate doctrine)).

C. The court did not err by not classifying Miles's request as a voluntary nonsuit.

On brief, Miles makes one additional argument about her request for withdrawal of her claims, as she argues that the circuit court erred by failing to classify her request as a voluntary nonsuit and thus permit her to reinstate the individual capacity claims. We reject Miles's argument for two reasons.

- 9 -

First, before the circuit court, Miles did not state with reasonable certainty that she should have been afforded the right to reinstate her claims under the nonsuit statute.[9] Under Rule 5A:18, "[n]o ruling of the [circuit] court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Thus, this argument is waived.

Second, application of the ends of justice exception to review Miles's arguments is not appropriate in this case. The ends of justice exception to Rule 5A:18 permits review of unpreserved arguments in narrow circumstances, when the record shows that doing so is "necessary to avoid a grave injustice or the denial of essential rights." *Mohamed v. Commonwealth*, 56 Va. App. 95, 102 (2010) (quoting *Charles v. Commonwealth*, 270 Va. 14, 17 (2005)). *See, e.g.*, *Allen v. Commonwealth*, 36 Va. App. 334, 339 (2001) (applying the ends of justice exception when a criminal defendant was denied constitutional rights).

Here, we do not believe that a miscarriage of justice would result from this Court not considering Miles's argument that she requested a nonsuit. Miles presents no evidence that her withdrawal complied with the requirements of the nonsuit statute, including that she "inform[ed] the court if the cause of action has been previously nonsuited." Code § 8.01-380(B). Further,

---

[9] In her motion to reconsider, Miles referred to the possibility of a nonsuit only insofar as she stated that the court wrongly recognized her oral request to withdraw her claims because Miles *did not* "submit a *nonsuit* order . . . or some other type of dismissal action," and a plaintiff lacks "the authority to dismiss a party from a suit on such an informal basis." (Emphasis added). In her reply in support of that motion, Miles reiterated this position but also appeared to state that if the dismissal order had used different language, it might have been proper for the court to consider Miles's request a nonsuit. Assuming without deciding that these positions do not implicate the approbate-reprobate bar, we hold that they do not constitute a timely objection with "reasonable certainty" on the grounds that Miles's request was a nonsuit. Rule 5A:18; *see City of Richmond v. Prop. Ventures, Inc.*, 80 Va. App. 538, 555 (2024) ("The purpose of [Rule 5A:18] is to ensure that any perceived error by the trial court is 'promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary.'" (alteration in original) (quoting *Fox v. Fox*, 61 Va. App. 185, 201 (2012))).

she presents no persuasive authority indicating that a conditional withdrawal request should be considered a nonsuit—in general, or specifically when the event on which reinstatement has been explicitly conditioned did not occur. As this unpreserved argument is also legally unsupported on the merits, we will not apply the ends of justice exception to review it. *See Mohamed*, 56 Va. App. at 102.

*II. The Circuit Court Did Not Err in Declining to Impanel a Jury on the Plea in Bar*

Miles's second assignment of error asserts that the circuit court erred by failing to impanel a jury to hear her plea in bar. For the following reasons, we find no error by the circuit court.

A. Background Law

A plea in bar "asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010). The party asserting the plea in bar bears the burden of proof on that issue. *Id.*

A plea in bar can, in some cases, turn on a purely legal question rather than a factual question, when a defendant "elects to meet [his] burden by . . . relying on the pleadings." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019). *See also Cal. Condo. Ass'n v. Peterson*, 301 Va. 14, 20-21 (2022) ("A plea in bar can raise an affirmative defense targeting solely the allegations of the complaint (assumed arguendo to be true), thus obviating any need for an evidentiary hearing.").

Under the Virginia Constitution, a litigant has a right to have a jury "resolve disputed facts." *Bethel Inv. Co. v. City of Hampton*, 272 Va. 765, 769 (2006). Therefore, if "the facts underlying the plea in bar are contested," a plaintiff is entitled to a jury trial on a plea in bar. *Ferguson Enters. v. F.H. Furr Plumbing, Heating & Air Conditioning*, 297 Va. 539, 549 (2019). On the other hand, when the party asserting a plea in bar makes a purely legal argument

and does not contest the facts alleged in the pleadings, there is no right to a jury trial. *See Massenburg*, 298 Va. at 217 (holding no right to jury trial where the City's "decision not to contest the complaint's allegations for purposes of the plea in bar means that the facts are not disputed").

B. Analysis

The defendants' plea in bar in this case presented a purely legal argument. The plea in bar posed purely legal issues, arguing (1) that the individual capacity claims should be treated as withdrawn and that (2) Miles's official capacity claims were barred by sovereign immunity. In making these arguments, the defendants explicitly referred to the allegations in the complaint and even attempted to strategically confine Miles to certain allegations, including that the relevant actions had been performed within the defendants' scope of their employment. In a reply brief filed in support of the plea in bar, the defendants explicitly stated that the defendants regarded the allegations in Miles's complaint as "uncontested for purposes of the instant motion." Thus, in their plea in bar, the defendants clearly made a "decision not to contest the complaint's allegations for purposes of the plea in bar [which] means that the facts [we]re not disputed." *Id.* at 217.

Miles disagrees, arguing that no matter what the defendants claim, they must have been "disputing the allegation that they wantonly and intentionally deviated from their job duties." This argument misapprehends the nature of the plea in bar. Asserting a purely legal argument, while assuming the complaint's allegations are true, was the defendants' decision to make. *See id.*

Miles cannot show that the circuit court erred by declining to convert the defendants' legal argument into a factual one. *See Cal. Condo. Ass'n*, 301 Va. at 23 ("An argument asserting a purely legal bar to the pleaded facts, assumed arguendo to be true, can be and should be

decided in that manner . . . ."). Thus, where the defendants' plea in bar did not dispute the facts alleged in the complaint, the circuit court did not err by declining to impanel a jury on the plea in bar. *See Massenburg*, 298 Va. at 217.

Miles lastly argues that the defendants' plea in bar asserted an impermissible "plea of the general issue." A "plea of the general issue" is a now-defunct plea that, at common law, was "a traverse, a general denial of the plaintiff's whole declaration or an attack upon some fact the plaintiff would be required to prove in order to prevail on the merits. It had the effect of challenging the plaintiff to go to trial and prove his case." *Stockbridge v. Gemini Air Cargo, Inc.*, 269 Va. 609, 617-18 (2005); Rule 3:8(a). Miles argues that here, the plea in bar constituted a "plea of the general issue" because the issue of sovereign immunity is "inexorably intertwined" with the issue of actual malice that Miles would have been required to demonstrate as part of her ultimate defamation case.[10]

As discussed, however, the defendants' plea in bar asserted a purely legal argument that assumed all allegations in the complaint, arguendo, to be true. As such, it did not effectively "challeng[e] the plaintiff to go to trial and prove his case." *See id.* at 618. It invited Miles to assert a legal, not a factual response, showing why—even if everything that Miles stated was true—she was not barred from prevailing on the merits. Therefore, the plea in bar did not assert a "plea of the general issue." *Id.* at 617.

---

[10] As noted, Miles does not assign error to the court's substantive holding that the defendants were entitled to sovereign immunity where they were sued in their official capacities.

CONCLUSION

For the foregoing reasons, we find no error in the circuit court's judgment. The circuit court did not err in declining to reinstate the individual capacity claims, nor did it err in declining to empanel a jury on the plea in bar.

*Affirmed.*